UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 MAR 18  AM 11: 23

CLERK

BY_____
DEPUTY CLERK

State of Vermont,
*Plaintiff*

v.

Dominic Bohnett,
Telecom Carrier Access, LLC d/b/a TCA VOIP,
and Telecom Carrier Access, Inc. d/b/a TCA
VOIP,
*Defendants*

Civil Action No. 5:22-cv-69

## Complaint

### I.   Introduction

The Vermont Attorney General brings this suit against Defendants Dominic

K. Bohnett, Telecom Carrier Access, LLC d/b/a TCA VOIP, and Telecom Carrier

Access, Inc. d/b/a TCA VOIP for knowingly facilitating illegal robocalls.  On at least

132 occasions, Defendants have been put on notice that they were facilitating illegal

robocalls into the United States.  Defendants ignored the import of these notifications.

In monitoring their call traffic, Defendants can see, in near real-time, that their call

traffic consists primarily of illegal robocalls.  But Defendants have chosen profits over

legality, typically earning from $1500 to $5000 each weekday from their substantially

illegal activity.  In the process, Defendants have knowingly brought thousands—if

not hundreds of thousands—of illegal and fraudulent phone calls into the State of

Vermont, and hundreds of millions nationwide.  Defendants' conduct violates the

Telemarketing and Consumer Fraud and Abuse Prevention Act, the Telemarketing

Sales Rule, the Telephone Consumer Protection Act, the Vermont Consumer Protection Act, and the Vermont Telephone Solicitation Act.  For such violation, the Vermont Attorney General seeks injunctive relief, civil penalties, disgorgement, fees and costs, and other appropriate relief.

## I.    Jurisdiction and Venue

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1355; the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6103(e), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310; the Telephone Consumer Protection Act, 47 U.S.C. § 227(g)(2); this Court has pendant jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.    Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1395(a), 47 U.S.C. §§ 227(e)(6)(E), 227(g)(4), and 15 U.S.C § 6103(e).  A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District.

3.    Plaintiff has notified the Federal Communications Commission ("FCC") of this civil action, pursuant to 47 U.S.C. § 227(g)(3).

4.    Plaintiff has notified the Federal Trade Commission ("FTC") of this civil action, pursuant to 15 U.S.C. § 6103(b).

## II. Parties

5.     The Vermont Attorney General is authorized under the Vermont Consumer Protection Act, 9 V.S.A. § 2458, to sue to enforce the Act's prohibitions on unfair and deceptive acts and practices in commerce.

6.     The Vermont Attorney General has the right to appear in any civil action in which the State has an interest.  3 V.S.A. § 157.  The Attorney General has an interest in ensuring that persons and entities that do business in Vermont do so in a lawful manner.

7.     The Vermont Attorney General has a right to bring this action to protect Vermonters under the Telephone Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6103(a) and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227(e)(6), 227 (g)(1).

8.     Defendant Telecom Carrier Access, LLC d/b/a TCA VOIP (hereinafter "TCA VOIP") is a California Limited Liability Company with a principal place of business in Santa Barbara, California.

9.     Defendant Telecom Carrier Access, Inc. d/b/a TCA VOIP (hereinafter "TCA VOIP") may be a successor California corporation to Telecom Carrier Access, LLC with a principal place of business in Santa Barbara, California.

10.     All acts alleged herein are the acts of all three Defendants, with "TCA VOIP" used to describe all three.  TCA VOIP is a Voice over Internet Protocol ("VoIP") "voice service provider" ("VSP").

11.     Defendant Dominic Bohnett is a resident of Santa Barbara, California. He is the owner and operator of TCA VOIP.

12.     Dominic Bohnett, for all allegations, purposes, actions and failure to act alleged herein, *is* TCA VOIP.  Accordingly, all allegations herein involving TCA VOIP are likewise allegations regarding the conduct of Dominic Bohnett.

### III. Background Law

13.     The Vermont Consumer Protection Act ("CPA") prohibits "unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a).

14.     In interpreting the Act, Vermont courts are "guided by the construction of similar terms contained in . . . the Federal Trade Commission ('FTC') Act and the courts of the United States." 9 V.S.A. § 2453(b).

15.     Pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108 ("TCFAPA"), the FTC has enacted a federal Telemarketing Sales Rule ("TSR") prohibiting robocalls absent limited exceptions. 16 C.F.R. § 310.3.

16.     In pertinent part, the TSR prohibits providing "substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates" certain other TSR provisions, 16 C.F.R. § 310.3, including prohibitions against:

  a. "Misrepresenting, directly or by implication, in the sale of goods or services[,]...[a]ny material aspect of the performance, efficacy, nature, or

central characteristics of goods or services that are the subject of a sales offer." 16 C.F.R. § 310.3(a)(2)(iii);

b. "Misrepresenting... [a] seller's or telemarketer's affiliation with... any person or government entity," 16 C.F.R. § 310.3(a)(2)(vii);

c. "Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution." 16 C.F.R. § 310.3(a)(4);

d. "Threats, intimidation, or the use of profane or obscene language." 16 C.F.R. § 310.4(a)(1);

e. "Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call." 16 C.F.R. § 310.4(a)(8);

f. "Initiating any outbound telephone call to a person when... [t]hat person's telephone number is on the 'do-not-call' registry, maintained by the [FTC]," 16 C.F.R. § 310.4 (b)(1)(iii)(B);

g. "Initiating any outbound telephone call that delivers a prerecorded message," unless certain limited exceptions are met, 16 C.F.R. § 310.4(b)(1)(v); and, *inter alia*,

h. "[I]n an outbound telephone call... to induce the purchase of goods or services[,] to fail to disclose truthfully, promptly, and in a clear and

conspicuous manner to the person receiving the call, …[t]he identity of the seller." 16 C.F.R. § 310.4(d)(1).

17.    The Telephone Consumer Protection Act (TCPA) prohibits persons from sending robocalls into the United States without prior consent from the call-recipients. *See, e.g.*, 47 U.S.C. § 227(b)(1) (prohibiting calls to "any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party").

18.    Likewise, under the Truth in CallerID Act, a person cannot send robocalls into the United States that "cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." 47 U.S.C. § 227(e)(1).

19.    Finally, the Vermont Telephone Solicitation Act ("VTSA") regulates telephone solicitations in Vermont. The VTSA prohibits telephone solicitations unless the caller is registered with the State of Vermont. The VTSA prohibits phony CallerIDs and requires compliance with the FTC's Do Not Call Registry; and the VTSA requires disclosure of the caller's name and number when soliciting for money or anything of value. 9 V.S.A. § 2464a(b).

## IV. Factual Background

### a. <u>Dominic Bohnett and TCA VOIP are one and the same.</u>

20.     This complaint alleges that Dominic Bohnett and TCA VOIP are alter egos. Dominic owns, manages and controls any and all significant operations of TCA VOIP. Accordingly, for purposes of this Complaint, "TCA VOIP" refers to both Dominic Bohnett and TCA VOIP.

### b. <u>Scope of fraud Via the Telephone System</u>

21.     As most persons with a phone in the United States have sadly learned, illegal robocalls have become a well-known feature of the U.S. telecom system.

22.     Robocalls are machine-generated calls, often made with hundreds of simultaneous sessions, that typically start with a pre-recorded message that is played once the called party answers.

23.     Illegal robocallers dial phone numbers by the thousands simultaneously, anticipating that a high volume of calls is needed to produce one victim.

24.     Most government and business imposter robocalls are brought to residents by a complicit U.S. voice service provider ("VSP") that has long been placed on notice of the character of calling traffic that it is forwarding. These notices come from an industry group officially designated by the Federal Communications Commission. This group is known as the Industry Traceback Group or "ITG", is part of USTelecom, a telecom industry organization.

25.     A company called YouMail monitors robocall traffic through its approximately 10 million subscribers and "honeypots"—telephone numbers used simply to monitor call traffic.

26.     YouMail also records and sometimes transcribes robocalls obtained through its subscribers and "honeypots."

27.     YouMail, based upon its substantial information base, estimates that the U.S. telephone system now carries approximately four billion robocalls per month, and that robocalls are now 60% of all telephone calls .

28.     YouMail currently estimates that 32% of this robocall traffic is attempted criminal fraud.

29.     That 32% represents more than a billion attempts at criminal fraud against U.S. consumers via robocalls every month—approximately three attempts for every person in the U.S.

30.     A significant and substantial number of these fraudulent robocalls—an estimated 1 in every 500—targets residents of Vermont.

31.     The sources of these fraudulent calls are often overseas and transient, and therefore difficult for U.S.-based law enforcement agencies to identify, investigate, and bring to justice.

32.     However, foreign robocallers cannot reach a resident in Vermont or the U.S. without the knowing complicity of established domestic companies like TCA VOIP.

33.     Companies that route telephone calls from a caller to a call-recipient are called "voice service providers" (VSPs).  Illegal government and business imposter robocalls typically flow from foreign VSPs to domestic VSPs—and then consumers—as follows.

34.     First, a foreign source originates an illegal robocall campaign.  That foreign source then sends the illegal robocall campaign over the Internet— sometimes through other foreign VSPs—to a smaller U.S.-based VSP.  Typically, the robocalls typically travel from smaller U.S. VSPs to larger U.S. VSPs, and then to the terminating carrier.

35.     The VSP which imports the robocall campaign charges the <u>calling</u> foreign source or foreign VSP a certain amount per call.

36.     That domestic VSP then pays its next downstream VSP per each call (theoretically less than it charged the foreign source per call) to route those calls onward to consumers.

37.     Hence, a fraudulent robocall now most frequently "hops" from a foreign entity to a domestic VSP (as the U.S. point of entry), then on through multiple domestic intermediary domestic VSPs to a large domestic carrier—such as Verizon Wireless or AT&T—that ultimately terminates the call with connection to an actual phone.

38.     But for the domestic VSPs that willingly establish business relationships with foreign entities and accept foreign-sourced illegal robocalls, most

illegal government and business imposter robocalls could not and would not transit

the U.S. and Vermont telecom systems and reach U.S. and Vermont residents.

39.     The willing and complicit VSP in this case is TCA VOIP.

**c.  Losses Caused by Illegal Robocalls**

40.     The Federal Trade Commission (FTC) maintains the FTC Consumer

Sentinel database, which is a composite federal database that compiles, among

other things, reports of fraud.  FTC Consumer Sentinel indicates that, in 2021,

consumers reported nearly $700 million in losses to fraud.

41.     TrueCaller, an analyst of robocall traffic, conducts surveys suggesting

that only 1 in 43 robocall fraud victims reports their losses to the FTC.  If true, for

every loss reported to FTC Consumer Sentinel, there are estimated to be 29

unreported losses.  By this analysis, actual consumer losses to fraud are estimated

to be approximately $30 billion per year.

42.     The FTC's Consumer Sentinel data suggest that around 36% of these

frauds are perpetrated through telephone calls.

43.     The TCPA estimated losses from illegal telemarketing at $40 billion

per year.  15 U.S.C. § 6101(3).

44.     One of the most common kinds of fraudulent telephone calls is the

government imposter robocall.  There, a foreign criminal syndicate or individual

uses computer technology automatically to dial thousands of U.S. telephone

numbers nearly simultaneously.  This computer technology can be referred to as an

Automatic Telephone Dialing System (or "ATDS").

45.     These robocalls deliver a pre-recorded voice that purports to be from a government agent.  In the recording, the agent threatens the call recipient with fines, the suspension or termination of government benefits, arrest, or other legal action—unless the call recipient presses "1" to speak to a government representative to resolve the concern.  If and when the call recipient presses "1," they are routed to a live scammer who completes the crime by obtaining funds from the victim via instant transfer, such as having the victim purchase gift cards and relay the gift card numbers to the perpetrator.

46.     Another common kind of fraudulent telephone call is a business imposter robocall.  There, the robocalls purport to be from a private company, like Amazon or Microsoft.  The pre-recorded message might relay, for example, that the call-recipient's credit card has been charged a large amount of money for an order, and request that the call-recipient press "1" to resolve the concern.  Like in the government imposter robocall scheme, if the call recipient presses "1," they are routed to a live scammer.  The scammer then strikes.  For example, the scammer might claim there was an overcharge and request the victim's bank account number to process a refund.  The scammer—or the criminal syndicate on behalf of which the scammer works—then uses that bank account information to steal from the victim.

47.     FTC Consumer Sentinel database analysis shows that fraudulent robocalls harm the entire U.S population, with older persons being the most vulnerable.  Persons aged 20-29 report average fraud losses of $326.  Persons aged 80 and over report average fraud losses of $1,300.

48.     These frauds not only victimize Vermonters; they compromise the integrity of our national and state telephone infrastructure.  Americans and Vermonters must now ignore telephone calls lest their time be wasted—or worse, that they be defrauded.

### d. The Traceback Process

49.     To identify which domestic VSPs facilitate illegal robocalls, the Federal Communications Commission has appointed an organization to perform tracebacks of fraudulent robocalls.  This organization is called as the Industry Traceback Group ("ITG") and is run by USTelecom, a telecom industry trade association.

50.     In response to a report of an illegal robocall, ITG can trace the path that a particular robocall took into and through the U.S.

51.     Tracebacks work in reverse, starting with the call as received by a phone or "honeypot," and then retracing the call path upward carrier-by-carrier, to find the source.

52.     First, ITG contacts the carrier that delivered the call to the consumer. ITG notifies the carrier of (a) the time and date of the call in question, (b) the calling number, (c) the called number; (d) the specific nature and content of the illegal robocall in question, and (e) the likely laws violated by the call.  Based on information obtained from YouMail, ITG frequently provides the carrier with a link to an audio recording of the illegal robocall.  ITG then asks the carrier to identify which upstream VSP routed that call to it.  Domestic VSPs are required to respond

to ITG's traceback inquiries.  See Appendix A, ITG Tracebacks of Illegal Calls to TCA VOIP.

53.     Once the carrier identifies which upstream VSP routed the call in question, ITG contacts *that* upstream VSP using a database tool.  As it did with the previous carrier, ITG provides that VSP with notice of the nature and content of the illegal robocall, usually with a link to a recording of the call.  Per its authority via the FCC, ITG likewise asks the upstream VSP to identify which further upstream VSP routed the call in question.

54.     By this method, ITG "asks" its way up the call-path, identifying each of the domestic VSPs involved in facilitating the illegal robocall in question, and each on notice of the nature and content of that call.  At some point in most tracebacks of government or business imposter fraud, a domestic VSP reports to ITG that it received the call from a foreign customer.  Thus, ITG—under FCC authority— identifies the VSP that served as the U.S. point of entry to the illegal robocall.

55.     Because robocalls are not single calls but thousands of calls, when ITG identifies which U.S. VSP routed a single illegal robocall into the U.S., ITG has identified a deluge of illegal calls.

56.     Invariably, because of the ATDS technology used by robocallers, the same U.S. VSP brought not just a single illegal robocall into the U.S., but an entire illegal robocall *campaign* into the U.S.  That campaign invariably consists of thousands or millions of essentially identical robocalls.

57.     Thus, domestic VSPs, such as TCA VOIP, who routinely receive notice from ITG that they are facilitating illegal robocalls but fail to take immediate and effective remedial efforts, knowingly and willingly enable and profit from illegal activity against—and often criminal frauds upon—U.S. citizens, including Vermont residents.

58.     Per ITG reporting, there are a relatively small number of domestic VSPs responsible for bringing the major share of government and business imposter fraud robocalls into the U.S., including TCA VOIP.  Just ten VSPs are responsible as point of entry for one-third of all tracebacks of illegal calls since 2020.

59.     During 2020, ITG traced 1,973 calls determined to be illegal, at an average of 38 tracebacks per week.

60.     During 2021, ITG traced 2,794 calls determined to be illegal, at an average of 54 tracebacks per week.  Of note, ITG has reported that, in 2021, 35% of its tracebacks were of illegal robocalls in which the caller fraudulently purported to be a representative of the United States Social Security Administration.

61.     Between January 1, 2020 and February 22, 2022, TCA VOIP ranked among the highest domestic VSPs in the number of tracebacks of fraudulent calls.

62.     Attached as Appendix A is a true list of all ITG tracebacks to February 22, 2022, that point to TCA VOIP as the point of entry.

a. **The Vermont Attorney General's Investigation of TCA VOIP**

63.     In partnership with the University of Vermont, the Vermont Office of Attorney General operates a Consumer Assistance Program ("CAP") where Vermonters can report fraud and obtain assistance with consumer concerns.

64.     The investigation in this matter began with a report to CAP from a resident of Essex Junction, Vermont. She reported she had received a Social Security imposter call.

65.     Specifically, she reported that at 11:01 a.m. on May 10, 2021, she had received a phone call displaying a (false) Vermont CallerID of (802) 734-9964.  The call delivered a pre-recorded message which stated: "You have a lawsuit being filed against you and all Social Security numbers bank accounts etc. will be blocked. Press 1 to speak to an FBI agent."  CAP denominated this report as CAP Scam Report #450.

66.     This robocall was a government imposter fraud.  There is no other, benign explanation, and TCA VOIP has offered none.

67.     Accordingly, CAP requested that ITG traceback this Social Security imposter robocall.

68.     ITG ran the traceback (designated traceback #4981).  At the conclusion of the traceback, ITG reported to the State of Vermont that TCA VOIP had been the illegal robocall campaign's U.S. point of entry.

69.     As part of the traceback, ITG had sent TCA VOIP the following notification, indicating that the caller "fraudulently claim[ed] to be from the U.S.

Social Security Administration threatening problems with SS account. Potential

TCPA violation and Consumer Protection Act violation":

| Call Details for Traceback #4981 0 seconds ago | |
|---|---|
| Campaign: | SSA-VT |
| Date/Time: | 2021-05-10 15:01:00 +0000 UTC |
| To: | +180273█████ |
| From: | +18027349964 |

Caller fraudulently claims to be from US Social Security Administration threatening problems with SS account. Potential TCPA violation and Vermont Consumer Protection Act violation.

(The last four digits of the called telephone number are redacted for privacy.)

70.     Likewise, on May 19, 2021, a resident of St. Albans, Vermont, reported

to CAP that he had received a government imposter robocall.  Specifically, he

reported that he had received a call that day displaying a (false) Vermont CallerID

of (802) 485-2264.  The phone call had delivered a pre-recorded message which

stated: "You are being contacted by Agent [name redacted].  You must immediately

put your work aside and respond to this message.  Press one to be connected to the

investigation department.  If you do not press one immediately, you[r] matter will

be referred to the investigation department."  CAP denominated this report as CAP

Scam Report #494.

71.     This robocall was a government imposter fraud.  There is no other,

benign explanation, and TCA VOIP has offered none.

72.     CAP likewise requested that ITG traceback this illegal robocall.

73.     ITG ran the traceback (designated traceback #4995).  At the conclusion

of its traceback, ITG reported to the State of Vermont that TCA VOIP was (again)

the illegal robocall campaign's U.S. point of entry.

74.     As part of the traceback, ITG sent TCA VOIP the following

notification, indicating that the caller "fraudulently claim[ed] to be from the U.S.

Social Security Administration threatening problems with SS account.  Potential

TCPA violation and Consumer Protection Act violation":

| Call Details for Traceback #4995 0 seconds ago | |
| --- | --- |
| Campaign: | SSA-VT |
| Date/Time: | 2021-05-19 16:25:00 +0000 UTC |
| To: | +180249▮▮ |
| From: | +18024852264 |
| Caller fraudulently claims to be from US Social Security Administration threatening problems with SS account. Potential TCPA violation and Vermont Consumer Protection Act violation. | |

(The last four digits of the called telephone number are redacted for privacy.)

75.     Based on these two tracebacks, among other information, the VT-AGO

commenced investigating TCA VOIP in greater depth, including the company's

traceback history generally.  With regard to tracebacks alone, the VT-AGO learned

as follows.

76.     Per ITG, TCA VOIP has one of the worst track records nationally in

terms of its frequency appearing in tracebacks of illegal robocalls to the U.S.

77.     From January 1, 2020 to February 22, 2022, ITG conducted

approximately 3,794 tracebacks of calls determined to be illegal.  Through these

tracebacks, ITG has identified 174 domestic VSPs as points of entry for illegal

robocalls to the U.S.

78.     Of these 174 VSPs, TCA ranks 4th highest, in the number of times it

appeared in ITG tracebacks as the U.S. point of entry for illegal robocalls.

79.     In the context of these 3,794 tracebacks, ITG identified TCA VOIP as

the U.S. point of entry for 132 illegal robocalls campaigns.

80.    In 81 of these 132 tracebacks, TCA VOIP had facilitated government imposter robocall campaigns, including the following campaigns and numbers of tracebacks to TCA VOIP for each such campaign:

| ITG Campaign Name | Tracebacks to TCA VOIP |
|---|---|
| CBP-GovtImpers | 4 |
| CBP-GovtImpers-P2 | 2 |
| DHS-GovImpers | 1 |
| Employment-EduMatch | 1 |
| FedReserv-Impers | 2 |
| GovSpoofing-P2 | 1 |
| LegalDept-Action | 4 |
| LegalDept-Action-P1 | 1 |
| Legal-Enforcement-Notice | 1 |
| LegalNotice-Identity | 1 |
| Medicare-Ineligible | 1 |
| Refund-CoronaFraud | 4 |
| Social Security Disability Consultant | 1 |
| SSA-CalltheSSA | 2 |
| SSA-CrimeandInvestigationDept VT | 1 |
| SSA-CrimeInvestigation | 1 |
| SSA-GiftCardLive | 1 |
| SSA-KindlyPressOne | 2 |
| SSA-LegalNotice | 3 |
| SSA-P1-BenefitsCanceled (GovtImpers) | 8 |
| SSA-P1-TexasFraud (GovtImpers) | 11 |
| SSA-RegretToInform | 2 |
| SSA-Various-P3(GovtImpers) | 1 |
| SSA-VT | 2 |
| StudentLoan-FederalSuspension | 1 |
| TestCall-StaySafeStayHome | 20 |
| TestCall-StaySafeStayHome-MD | 1 |
| USTreas-SSA-EnforceAction (GovtImpers) | 1 |
| **Total** | **81** |

See Appendix A for detail and recordings of these calls.

81.    In 51 of the 132 tracebacks, TCA VOIP had facilitated business imposter robocall campaigns, including the following campaigns and numbers of tracebacks to TCA VOIP for each such campaign:

| ITG Campaign Name | Tracebacks to TCA VOIP |
|---|---|
| Amazon-AuthorizeOrder | 10 |
| Amazon-SuspiciousCharge | 1 |
| Amazon-SuspiciousCharge-P | 11 |
| Apple-iCloud-AccountBreached | 7 |
| AutoWarranty-Extend2 | 2 |
| BizListing-VerifiedByGoogle | 1 |
| BofA-Chinese Voice Department | 1 |
| CCIRR-P1FinancialImpers | 1 |
| CCIRR-VisaAlert | 5 |
| Debt Reduction-Account Holder Impersonation | 3 |
| Hotel-ComplimentaryStay | 1 |
| Spoof-12/21/20 | 1 |
| Travel Scam-2 | 4 |
| Utility-30MinDisconnect | 9 |
| Utility-Discount | 1 |
| Utility-ElectricRebateCheck-P1 | 2 |
| Utility-Rate Reduction | 1 |
| **Total** | **51** |

See Appendix A for detail and recordings of these calls.

82.    The 132 tracebacks showed that the TCA VOIP customers sending these calls were generally foreign, including the following providers.

| Upstream Voice Service Provider | Appearance in TCA VOIP tracebacks |
|---|---|
| Ace Peak Investments | 4 |
| Axkan Consultores | 8 |
| Dawz Telecom | 1 |
| Lets Dial SG pte ltd | 1 |
| My Country Mobile | 87 |
| Shayona Global | 21 |
| Softtop Limited | 1 |
| Techknowledge Open Systems | 2 |
| twiching | 7 |

83.    As example of one such traced call:

a.  On November 16, 2020, at 12:23 p.m., a resident of Waterbury, Vermont received a Social Security imposter robocall displaying a CallerID of 314-669-8757.  Upon report of the call, ITG traced the call to TCA VOIP as the robocall campaign's U.S. point of entry (Traceback #3652).

b.  That call was transcribed by YouMail as follows: "Against your social security number by the Federal crime and investigation Department. We need to talk to you as soon as possible.  Again this call is from Social Security Administration  ***  and to reach our department press one to call on same number I repeat press one now."  A recording of the similar call is at this shortened URL https://bit.ly/3J4oYM

c.  As part of that traceback (#3652), ITG sent TCA VOIP the following notification, indicating, among other things, that the caller "fraudulently claim[ed] to be from the U.S. Social Security Administration, Crime and Investigation Department, threatening problems with SS account.

Potential TCPA violation and Vermont Consumer Protection Act

violation":



| Call Details for Traceback #3652 (new) | |
| --- | --- |
| Date/Time: | 2020-11-16 17:23 UTC |
| To: | +1802233 |
| From: | +13146698757 |
| Campaign: | SSA-CrimeandInvestigationDept VT |
| Caller fraudulently claims to be from US Social Security Administration, Crime and Investigation Department, threatening problems with SS account. Potential TCPA violation and Vermont Consumer Protection Act violation. | |

(The last four digits of the called telephone number are redacted for privacy and
because they contain YouMail intellectual property.)

84.     Of note, TCA VOIP's appearances in ITG tracebacks has been steady

over time.  TCA VOIP appeared in ITG tracebacks during 52 of the 80 weeks

leading up to February 22, 2022—more weekly appearances (during that time

period) than all but two VSPs nationally.

85.     TCA VOIP's 132 tracebacks showed the company facilitating illegal

robocalls to area codes in Vermont and 40 other  states and the District of

Columbia, including AL, AR, AZ, CA, CO, CT, DC, DE, FL, GA, ID, IL, IN, KY, LA,

MA, MD, MI, MN, MO, MS, NC, ND, NE, NH, NJ, NM, NV, NY, OH, OK, OR, PA,

SC, TN, TX, UT, VA, VT, WA, WI, and WV.   However, the illegals calls go to each

and every state.

86.     Subsequent analysis shows that TCA VOIP's illegal robocalls

repeatedly and incessantly have gone to every state in the United States.

87.     TCA VOIP's high prevalence in ITG tracebacks demonstrates that TCA

VOIP has facilitated high numbers of illegal robocalls over an extended period of

time, was frequently notified by ITG that it was facilitating illegal robocalls, but,

despite these notices, took insufficient change its behavior.

88.     As described below, TCA VOIP's call detail records confirm that the company knowingly facilitated thousands—if not millions—of illegal robocalls into the U.S. and Vermont, and did so for profit.

### e.  What TCA VOIP's Call Detail Records Show

89.     VSPs maintain minute-by-minute, detailed "call detail records" (CDRs) for each telephone call they relay.

90.     For each such call, CDRs show:

   a.  The exact date and time of the call;

   b.  Which customer (of the VSP) sent the call;

   c.  The calling number / CallerID displayed;

   d.  The called number; and, among other call characteristics,

   e.  The exact duration of the call, in seconds.

91.     VSPs maintain CDRs in part to inform and justify their billing of customers.

92.     VSPs can review their CDRs in real-time of their CDRs and their call traffic's *content* within less than ten minutes.

93.     CDRs here show numerous calls with no plausible legitimacy, such as invalid area code, using 911 as an area code, using invalid length (too long or too short), invalid (non-existent) prefix.   In these situations, there is not even a pretense that these are valid CallerIDs.

94.     Indeed, TCA VOIP has a switch or "software provider," 46Labs, that uses YouMail analytics that can conduct near real-time analysis of whether TCA VOIP's calls are likely fraudulent.

95.     Through reviews and analyses of CDRs, VSPs such as TCA VOIP can see whether they are likely facilitating illegal robocalls.  CDRs of illegal calls show a distinct and unmistakable pattern that puts the VSP on notice of the need for further investigation:

  a.  A high-volume of calls with very short Average Call Duration.

  b.  Most calls (98%) will be less than 1 minute (because the called party hangs up upon answering).  Many calls will last under 15 seconds.

  c.  Few calls are more than two minutes (reflecting normal human-to-human conversational call traffic).

  d.  A tiny fraction of calls will last over 20 minutes.  These are the calls in which the caller has engaged with the scammer and is potentially being defrauded.

  e.  The calling numbers, despite being based outside of the U.S., appear to be U.S. telephone numbers.  Often, the area codes of the calling numbers will match the area codes of the called numbers.  The latter is called "neighbor spoofing."  Criminal syndicates use "neighbor spoofing" to trick the call recipient into believing the call is from a local resident or business origin, thereby increasing the chances the call recipient will answer.  Because almost all of TCA VOIP's customers are foreign VSPs,

there is no plausible reason for a new, local CallerID to be displayed for every two calls made, other than fraud.

f.  A high percentage of calls are to wireless phone numbers and numbers on the FTC's Do Not Call list.  That is, the call source is operating without regard to U.S. telemarketing laws.

g.  There are numerous calls with no plausible legitimacy, such as calls using invalid area codes, 911 as an area code, invalid lengths (too long or too short), or invalid (non-existent) prefixes.  In these situations, the source of the robocalls is making no pretense that calls have valid CallerIDs.

h.  **Meeting with TCA VOIP Representatives August 19, 2021**

96.    In an attempt to alert TCA VOIP and dissuade it from handling fraudulent traffic, representatives of law enforcement from Vermont and the Social Security Administration Office of Inspector General ("SSA OIG") met virtually with representatives of TCA VOIP on August 19, 2021.  The officials from law enforcement showed the extensive losses to victims based on data from the FTC Consumer Sentinel.  Law enforcement officials presented behavioral data from TCA VOIP's own CDRs and content analytics from YouMail content analytics showing the strong indications of fraud as shown by

97.    At that point, Vermont was looking at a smaller slice of TCA VOIP traffic—for calls from two TCA VOIP foreign customers.  These were calls from

Axkan sent by TCA VOIP on May 10, 2021, and from Shayona Global sent by TCA VOIP on May 19, 2021.

98.     The behavioral metrics for those two customers on those two days showed unmistakable indications of fraud including:

99.     TCA VOIP attempted 30,280 to Vermont area code 802. That same two hours, TCA VOIP attempted 21,559,976 calls across the U.S.

    a. The average call duration for 859,212 completed calls was 17 seconds, indicating that the more than the recipients of the call terminated the calls within that time or sent them to voicemail.

    b. A new CallerID was displayed for virtually all calls, an essentially one-to-one ratio. These foreign customers showed new, fake CallerIDs for essentially every call.

    c. In 99% of the calls, the calls were disconnected in 60 seconds or less.

    d. The area code matched the called number in 93% of calls, indicating "neighborhood spoofing" of CallerIDs on the overwhelming majority of calls.

    e. Similarly, the SSA OIG analysis of May 10th and 19th showed for the 14 most frequent CallerIDs displayed, consisting of 13,568 calls, in 10,738 of the calls YouMail data showed the calls contained government or business imposter scams, legal threats, arrest threats or utility cut-off threats.

100.    In response to this presentation from law enforcement, Dominic
Bohnett and his then-associate Mark Jordan indicated that they took this
(fraudulent) "short duration traffic" "because they give us business."

101.    Subsequent analysis of calls TCA VOIP handled in just two hours
(made on August 17, 2021), showed the obvious indications of fraud in the
behavioral analytics.  These analytics include:

    a.   TCA VOIP completed 1,608,161 calls in just two hours that day.

    b.   TCA VOIP attempted 28,642 calls to Vermont area code 802.  In that
       same two hours, TCA VOIP attempted  21,559,976 calls across the U.S.

    c.   The ratio of called numbers to CallerIDs displayed was 1.5, indicating a
       new (false) CallerID was displayed more for every 1.5 calls.

    d.   Most called parties hung up on the call or sent them to voicemail, with
       an average call duration of 15 seconds for 1.6 million completed calls.
       This is the actual behavior of the phones of those 1.6 million calls.

    e.   Few calls lasted more than 60 seconds, with 98.6% of called parties
       terminating the call in 60 seconds or less.

    f.   Of the 1.6 million calls, only 4,512 lasted more than 3 minutes.

    g.   The concerning calls where people are victimized are the tiny fraction of
       calls lasting more than 20 minutes, in this day, just 231 calls.  This
       demographic shows the wide net the fraudulent callers cast, with only 1
       in 6962 called parties substantially engaging with the illegal robocalls
       and becoming likely victims of government and business imposter fraud.

102.   TCA VOIP indicated that it would work to address illegal robocalls from its upstream providers, but also indicated that it needed the business from My Country Mobile, TCA VOIP' biggest customer.

### f.   **August 30, 2021, Call Detail Records and Analysis**.

103.   Despite the assurances of TCA VOIP, the problems with TCA VOIP facilitating unlawful traffic continued.  CDRs from TCA VOIP on August 30, 2021, demonstrate that it completed 4,619,062 calls that day, including 3,015,165 calls from My Country Mobile, its principal customer throughout this investigation. ("Completed" means the calls were either answered or went to voice mail.)

104.   My Country Mobile is a foreign VSP, apparently based in India.

105.   The CDRs for these 3,015,165 calls revealed that many were illegal robocalls.

    a.   The CDRs reflected a high volume of short-duration calls.  For the 3,015,165 calls, the Average Call Duration was just 14 seconds.  Thus, for these 3 million calls, the called party typically answered the phone and quickly hung up: the calls were uniformly unwanted.  99.1% of the calls lasted less than one minute.  Only .2% of the calls lasted longer than two minutes.  There is no benign explanation for this call traffic pattern.

    b.   Second, across the 3,015,165 calls, despite being foreign in source, the calling numbers (or CallerIDs displayed) were U.S. telephone numbers.  Generally, the area code of the calling number matched the area code of

the called number.  Given the broader context (of a high volume of short
duration calls), this is obvious "neighbor spoofing"—another hallmark of
fraud.

c.  Lastly, the ratio of called numbers to CallerIDs displayed was
exceedingly low.  For every 1.65 calls dialed, a new CallerID was
displayed.  Again, given the broader context (of a high volume of short
duration, likely "spoofed" calls), there is no benign explanation for this
ratio.  The calling source was generating new numbers for each 1 or 2
calls to avoid detection as fraudulent and being blocked by downstream
VSPs.  The robocalls were obviously fraudulent.

d.  The CDRs also showed that all calls to are code 802 were blocked, in an
evident effort by TCA VOIP to continue facilitating illegal traffic without
Vermont knowing of the same.  Indeed, this blocking of area code 802
appears to be the only significant action TCA VOIP took, in an
admission that TCA VOIP intended to continue to handle fraudulent
traffic.  Nonetheless, TCA VOIP calls continue to come to Vermont in
significant volumes, to mobile phones in Vermont with area codes other
than 802.

106.   The Vermont Office of Attorney General informed TCA VOIP of these
findings of continued illegal traffic by email on September 9, 2021, at 7:06 p.m.

107.   Rather than concede the obvious—that TCA VOIP had determined to
continue to host fraudulent traffic—TCA VOIP responded: "The traffic is 99.999%

legitimate with 1 out of 100 million fraudulent calls." TCA VOIP denied it was "willfully blind as to the illegal character of that traffic," adding, "It is not the balance I want but it's the business we reach."

108.    Subsequently, the Vermont Attorney General requested YouMail to match TCA VOIP's August 30, 2021, CDRs with YouMail's database of recorded calls.

109.    YouMail indicated that TCA VOIP had, in fact, been facilitating illegal robocalls that day. For instance, the twelfth call reported by YouMail contains this transcript of a patently obvious fraud: "Inform you that there is a legal enforcement actions filed on your social security number for fraudulent activities. So, when you get this message kindly press one to connect with the next available officer. Thank you." The recording is at this URL redirect: https://bit.ly/3CCOX7S

110.    The thirteenth call reported stated: "This is [name redacted] calling you from the legal department the very second you receive this message you need to leave your workload. So that we can discuss about your case and take necessary action on this matter in order to connect federal agents press one and you will be connected to the concern department. If we don't hear from you then we will be forced to take legal action against you press one and you will be connected to the concern department." The recording is at this URL redirect: https://bit.ly/3vXtPIh

111.    Ultimately, the YouMail content matching showed that, as expected, the CDRs showed very substantial levels of fraud.

112.    When informed of these results, TCA VOIP continued to insist that it was not responsible; that it was doing more; and that it could become "an informant for the FCC." September 13, 2021. "It's like direct mailers, not popular but is a legitimate business." October 11, 2021.

113.    And TCA VOIP continued to facilitate illegal robocalls and continued to show up in ITG tracebacks. See Appendices A and B. There was insignificant change between October 2021 and January 2022.

### g.  December 15, 2021, Call Detail Records and Analysis

114.    TCA VOIP's CDRs from on December 15, 2022, reflect TCA VOIP's continued efforts to facilitate illegal robocalls.

115.    That day, TCA VOIP relayed 10,253,130 completed calls from 42 customers (a large increase in customers).

116.    The CDRs for these calls reflect, again, that TCA VOIP's call traffic consisted almost entirely of illegal robocalls. That is:

    a. The call traffic consisted of a high-volume of short-duration calls. Over 98.9% of the calls lasted under 60 seconds. Of the 28 customers with more than ten thousand calls, the CDRs reflected an average call duration of 9 to 27 seconds.

    b. The high volume of short-duration calls that displayed false U.S. CallerIDs (despite their foreign source) to U.S. calling numbers, often with matching area codes and local exchanges—again, obvious "neighbor spoofing."

c.  The ratio of called numbers to CallerIDs displayed was low, with the
foreign robocallers generating a new CallerID for every 1.06 – 13.76
calls.  Again, given the broader context (of a high volume of short
duration, likely "spoofed" calls), there is no benign explanation for these
new, different CallerIDs other than fraud and attempting to evade
detection.

117.   YouMail's subsequent content analysis of this TCA VOIP call traffic
identified that many of the calls were in fact fraudulent.  For example, one such call
(showing CallerID 805-712-1120) was clear Social Security fraud, saying: "This call
is from a federal agency to suspend your social security number on an immediate
basis.  As we have received suspicious trails of information with your name.  The
moment you receive this message.  You need to get back to us to avoid the
consequences to connect the call immediately press one."

### h.  Summary of TCA VOIP Traffic During Vermont Investigation

118.   In total, Vermont has analyzed approximately 1.4 billion attempted
calls that TCA VOIP relayed from abroad into the U.S. over 180 days.  Vermont has
undertaken sample analyses over the May 2021 to February 2022 time period.  In
this analysis, Vermont found 886 million attempted calls from My Country Mobile.
The connected My Country Mobile calls have an average call duration of less than
13 seconds, indicating that—like TCA VOIP's call traffic generally—the typical
called party quickly rejected each call.  Less than .3% lasted more than two
minutes.

119.    Notably, since the State of Vermont commenced investigating TCA VOIP on or around June 25, 2021, the State has repeatedly notified TCA VOIP of manner in which its call traffic self-evidently consisted of illegal robocalls.

120.    In response, TCA VOIP made no effective effort to reform its conduct, instead simply responding to tracebacks.  TCA VOIP could have suspended its operations pending the implementation of new customer screening or call monitoring practices.  It did not.  TCA VOIP could have terminated particular customers pending a review of their call traffic.  It did not.  TCA VOIP could have implemented effective analytic technology to follow it call traffic patterns in real-time to identify and block illegal robocalls.  It did not.  Instead, aside from some modest adjustments, TCA VOIP has continued to facilitate obviously illegal robocalls—and profit from doing so.

121.    Even TCA's modest adjustments reflected the company's awareness that its primary business is to facilitate illegal robocalls.  For example, as mentioned above, in the late summer of 2021, in response to the State of Vermont's investigation, TCA VOIP commenced blocking all calls to area code 802.  Such efforts do not impact the 2% to 4% of Vermonters with phone numbers other than area code 802.

122.    Further, this blocking demonstrated that TCA VOIP knew it was facilitating illegal robocalls and had no intention of correcting that illegal behavior but was simply trying to avoid accountability by trying to block calls to Vermont.

123.    Despite the Vermont Attorney General requesting TCA VOIP to place a litigation hold on CDRs during this investigation, TCA VOIP is deliberately allowing its CDRs during the investigation to be destroyed as part of a very short retention policy.  As the Vermont Attorney General got better, faster access to traceback data, TCA VOIP advised its switch or software provider on January 10, 2022: "The AG's have gotten faster.  The latest request is for Dec 13th forward.  Can you verify that the oldest is rolling off and I have 90 days of data?"

### i.   TCA Earnings from Illegal Robocalls

124.    Since August 14, 2020, it is estimated that TCA VOIP has earned a gross income of $1.25 million from facilitating call traffic.  A substantial portion of this revenue is for facilitating illegal call traffic.

### j.   Effect and Response During Eight Months of Investigation

125.    Since August 14, 2020—the date ITG first conducted a traceback identifying TCA VOIP as the point of entry for illegal robocalls U.S. point of entry— TCA VOIP has relayed approximately 50 million call attempts per business day, and an estimated 3 to 10 million completed calls per business day.

126.    These calls have gone to every state in the United States.

127.    As reflected in the 132 tracebacks implicating TCA VOIP and TCA VOIP's CDRs and related YouMail data, the majority of these calls were illegal robocalls.

128.    Through eight months of investigation, TCA VOIP has offered no evidence that its robocall traffic is legal traffic.

129.    Based on TCA VOIP's call volume, YouMail data on robocalls, and FTC Consumer Sentinel data on telephone fraud losses, it is estimated that TCA VOIP's knowing facilitation of illegal call traffic contributed substantial earnings to criminal fraud syndicates by defrauding U.S. consumers—including Vermont consumers—of somewhere between $116 million (based on FTC Consumer Sentinel data) to $3.5 billion (based on TrueCaller estimates).

130.    To date, TCA VOIP continues knowingly and willingly to provide a telecom platform for illegal robocalls, including criminal fraud, and to profit from every such call while doing so.

131.    The Federal Communications Commission ("FCC") issued its first cease and desist letter to TCA VOIP on February 10, 2022.

132.    On March 7, 2022, the FBI issued a Public Service Announcement saying: "The FBI is warning the public of ongoing widespread fraud schemes in which scammers impersonate law enforcement or government officials in attempts to extort money or steal personally identifiable information." FBI Alert no. I-030722-PSA.  The release is at this URL: https://www.ic3.gov/Media/Y2022/PSA220307 .The FBI description exactly describes the conduct repeatedly perpetrated and facilitated by TCA VOIP in this matter.

## Prayer for Relief

## Violations

## Violations of the Telemarketing Sales Rule

## Count I

### (Violating the Prohibition against
### Deceptive Telemarketing Acts or Practices)

1.      The State of Vermont realleges and incorporates herein each and every

allegation in this Complaint.

2.      TCA VOIP violated 15 U.S.C. § 6102(c) and 16 C.F.R. § 310.3 and by

engaging in a pattern or practice of deceptive telemarketing to residential telephone

subscribers, including subscribers in Vermont.

3.      TCA VOIP  violated 16 C.F.R. § 310.3(b) by providing substantial

assistance or support to any seller or telemarketer.

4.      TCA VOIP knew or consciously avoided knowing the sellers or

telemarketers were engaged in an act that violated 16 C.F.R. § 310.3(a)(2)(iii).

5.      TCA VOIP knew or consciously avoided knowing the sellers or

telemarketers were engaged in an act that violated 16 C.F.R. § 310.3(a)(2)(iii),

including that the sellers or telemarketers, through their "computer support,"

Amazon support, and/or Social Security and Internal Revenue calls, misrepresented

the central character of the service they were offering, in violation of 16 C.F.R.

§ 310.3(a)(2)(iii).

## Count II

### (Violating the Prohibition against
### Deceptive Telemarketing Acts or Practices)

6.     The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

7.     Defendants violated 15 U.S.C. § 6102(c) and 16 C.F.R. § 310.3 and by engaging in a pattern or practice of deceptive telemarketing to residential telephone subscribers, including subscribers in Vermont.

8.     TCA VOIP violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support to any seller or telemarketer.

9.     TCA VOIP knew or consciously avoided knowing the sellers or telemarketers were engaged in an act that violated 16 C.F.R. § 310.3(a)(4).

10.     TCA VOIP knew or consciously avoided knowing the sellers or telemarketers were engaged in an act that violated 16 C.F.R. § 310.3(a)(4).

11.     The sellers or telemarketers made false or misleading statements to induce Vermont residents to purchase a support package or provide payment information for a fraud, in violation of 16 C.F.R. § 310.3(a)(4).

12.     In many if not most instances, the sellers or telemarketers used misleading or inaccurate caller identification to mislead the Vermont residents, in violation of 16 C.F.R. § 310.3(a)(4).

## Count III

### (Violating the Prohibition against
### Abusive Telemarketing Acts or Practices)

13.     The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

14.     TCA VOIP violated 15 U.S.C. § 6102(c) and 16 C.F.R. § 310.4 and by engaging in a pattern or practice of deceptive telemarketing to residential telephone subscribers, including subscribers in Vermont.

15.     TCA VOIP violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support to any seller or telemarketer.

16.     TCA VOIP knew or consciously avoided knowing the sellers or telemarketers were engaged in an act that violated 16 C.F.R. § 310.4(d)(1), the identity of the seller.

17.     TCA VOIP violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support to any seller or telemarketer.

## Count IV

### (Violating the Prohibition against
### Abusive Telemarketing Acts or Practices)

18.     The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

19.     Defendants violated 16 C.F.R. § 310.4 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of deceptive telemarketing to residential telephone subscribers, including subscribers in Vermont.

20.    TCA VOIP violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support to any seller or telemarketer.

21.    TCA VOIP knew or consciously avoided knowing the sellers or telemarketers were engaged in an act that violated 16 C.F.R. §310.4(b)(1)(iii)(B).

22.    The sellers or telemarketers initiated outbound telephone calls to telephone numbers on the National Do Not Call Registry, in violation of 16 C.F.R. §310.4(b)(1)(iii)(B).

## Count V

### (Violating the Prohibition against
### Abusive Telemarketing Acts or Practices)

23.    The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

24.    TCA VOIP violated 16 C.F.R. § 310.4 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of deceptive telemarketing to residential telephone subscribers, including subscribers in Vermont.

25.    TCA VOIP violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support to any seller or telemarketer.

26.    TCA VOIP knew or consciously avoided knowing the sellers or telemarketers were engaged in an act that violated § 310.4(b)(1)(v)(A)(i)—consent to receive prerecorded calls.

## Violations of the Telephone Consumer Protection Act

## Count VI

## (Violating The Prohibition Against Calling Numbers Listed on The National Do Not Call Registry)

27.     The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

28.     Upon information and belief, TCA VOIP violated 47 C.F.R. § 64.1200(c)(2) and 47 U.S.C. § 227(c) by engaging in a pattern or practice of initiating telephone solicitations to residential telephone subscribers, including subscribers in Vermont, whose telephone numbers were listed on the National Do Not Call Registry.

## Count VII

## (Violating the Prohibition against the Use of Artificial or Prerecorded Voice Messages to Residential Telephone Lines)

29.     The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

30.     Upon information and belief, TCA VOIP violated 47 C.F.R. § 64.1200(a)(3) and 47 U.S.C. § 227(b)(l)(B) by engaging in a pattern or practice of initiating telephone calls to residential telephone lines, including lines in Vermont, using artificial or prerecorded voices to deliver a message without the prior express written consent of the called party and where the call was not initiated for emergency purposes or exempted by rule or order of the FCC under 47 U.S.C. § 227(b)(2)(B).

## Count VIII

### (Violating the Prohibition against the Use of Artificial or Prerecorded Voice Messages to Cellular Telephone Lines)

31.     The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

32.     Upon information and belief, TCA VOIP violated 47 C.F.R. § 64.1200(a)(1)(iii) and 47 U.S.C. § 227(b)(1)(A)(iii) by engaging in a pattern or practice of initiating telephone calls to cellular telephone lines, including lines in Vermont, using artificial or prerecorded voices to deliver a message without the prior express consent of the called party and where the call was not initiated for emergency purposes or exempted by rule or order of the FCC under 47 U.S.C. § 227(b)(2)(B).

## Count IX

### (Violating the Prohibition against Use of Artificial or Prerecorded Voice Messages Without Clear Disclosure of Caller Identity)

33.     The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

34.     Upon information and belief, TCA VOIP violated 47 C.F.R. § 64.1200(b)(1) and 47 U.S.C. § 227(d)(3)(A) by initiating telephone calls to residential lines using artificial or prerecorded voices to deliver messages to residents in Vermont, that failed to clearly state, at the beginning of the message, the identity of the business, individual, or other entity responsible for initiating the call.

## Count X

### (Violating the Prohibition against Misleading or Inaccurate Caller Identification Information)

35.     The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

36.     Upon information and belief, TCA VOIP violated 47 C.F.R. § 64.1604(a) and 47 U.S.C. § 227(e)(1) by engaging in a pattern or practice of initiating telephone calls and, with the intent to defraud, cause harm, or wrongfully obtain anything of value, knowingly caused, directly or indirectly, caller identification services to transmit or display misleading or inaccurate caller identification information to residents in Vermont.

### Violations of Vermont Telemarketing Laws

### Count XI

### (Violating 9 V.S.A. § 2464a, Act no. 66 to Comply with the Federal Do Not Call Rule.)

37.     The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

38.     TCA VOIP violated 9 V.S.A. § 2464a(b)(2) by making telephone call to a telephone number in Vermont that violates the Federal Trade Commission's Do Not Call Rule, 16 C.F.R. subdivision 310.4(b)(1)(iii), or the Federal Communication Commission's Do Not Call Rule, 47 C.F.R. subdivision 64.1200(c)(2) and subsection (d), as amended from time to time.

## Violations of Vermont Telemarketing Laws

## Count XI

## (Violating Act no. 66 Requiring Telemarketers to Provide Accurate Caller Identification Information.)

39.     The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

40.     TCA VOIP violated 9 V.S.A. § 2464a(b)(3)(A) by making telephone calls to a telephone number in Vermont that with false caller identification information.

## Violations of Vermont Consumer Protection Act

## Count XII

## (Violating Vermont Consumer Protection Act)

41.     The State of Vermont realleges and incorporates herein each and every allegation in this Complaint.

42.     TCA VOIP violated 9 V.S.A. § 2464a(b)(3)(A) have engaged and are continuing to engage in unfair acts and practices in commerce, in violation of the Vermont Consumer Protection Act, 9 V.S.A. § 2453(a), which offend the public policy and laws as expressed in state and federal laws governing robocalls such as enumerated above, are immoral, unethical, oppressive and unscrupulous; and cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

43.     Defendant has engaged and is continuing to engage in deceptive acts and practices in commerce, in violation of the Vermont Consumer Protection Act, 9

V.S.A. § 2453(a), by knowingly routing to Vermont phone numbers robocalls that misrepresent an affiliation with the governmental entity of the Social Security Administration, and other government and business entities, being imposter schemes, and are otherwise fraudulent; and (2) directly benefiting from this conduct, getting paid for each completed call.

### Prayer for Relief

WHEREFORE, Plaintiff requests this Court:

1.  Enter judgment against Defendants Dominic Bohnett and Telecom Carrier Access, LLC and in favor of Plaintiff for each violation alleged in this Complaint.

2.  Enter judgment and against all and award Plaintiff civil penalties up to $43,792 for each violation of the TSR, and award Plaintiff such relief as the Court finds necessary to redress injury to consumers resulting from said Defendants' violations of the TSR, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.

3.  Enter a permanent injunction to prevent future violations of the TSR by Defendants Dominic Bohnett and Telecom Carrier Access, LLC.

4.  Assess against Defendants Dominic Bohnett and Telecom Carrier Access, LLC damages of one thousand five hundred dollars ($1500) for each violation of the TCPA found by the Court to have committed by said willfully and knowingly; if the Court finds that Defendants have engaged in violations of the TCPA that are not willful and knowing, then assessing against said Defendants

damages of five hundred dollars ($500) for each violation of the TCPA, as provided by 47 U.S.C. §227.

5.  Permanently enjoin Defendants from violating the TCPA, both generally and specifically, by enumerating the acts in which Defendants are permanently enjoined from engaging.

6.  Permanently enjoin all Defendants, their agents, representatives, employees, and assigns and any other person acting on behalf of any from engaging in acts prohibited by Vermont law, including specifically:

> a.  Making, causing to be made, or the assisting and facilitating in telephone sales calls to telephone numbers of Vermonters in violation of ; and
>
> b.  Making, causing to be made, or the assisting and facilitating in telephone calls in violation of 9 V.S.A. § 2464a(b)(2) that violate the Federal Trade Commission's Do Not Call Rule, 16 C.F.R. subdivision 310.4(b)(1)(iii), and/or the Federal Communication Commission's Do Not Call Rule, 47 C.F.R. subdivision 64.1200(c)(2) and subsection (d), as amended from time to time.

7.  Permanently enjoin Defendants Dominic Bohnett and Telecom Carrier Access, LLC, their agents, representatives, employees, and assigns and any other person acting on behalf of any from transmitting or causing the transmission of misleading or inaccurate caller identification information to Vermont telephone numbers in violation of 9

V.S.A. § 2453(a).

8. Order Defendants Dominic Bohnett and Telecom Carrier Access, LLC, jointly and severally, to pay

    a. a civil penalty of ten thousand dollars ($10,000) for each violation pursuant to 9 V.S.A. § 2458(b)(1);

    b. an order for restitution pursuant to 9 V.S.A. § 2458(b)(2); and

    c. an order requiring reimbursement to the State of Vermont for the reasonable value of its services and its expenses in investigating and prosecuting the action, pursuant to 9 V.S.A. § 2458(b)(3).

9. Award Plaintiff such other and additional relief as the Court may determine to be just and proper.

Dated: March 18, 2022

STATE OF VERMONT

THOMAS J. DONOVAN JR.
ATTORNEY GENERAL

By:

Edwin L. Hobson
Jamie Renner
*Assistant Attorneys General*
Office of Attorney General
109 State Street
Montpelier, Vermont 05609
ted.hobson@vermont.gov
(802) 828-3171

Appendices

Appendix A – Tracebacks by ITG Showing Defendants at the Point of Entry for Illegal Robocalls