U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 APR 13 PM 12: 49

CLERK

BY_____

DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| State of Vermont,<br>*Plaintiff*<br><br>         v.<br><br>Dominic Bohnett,<br>Telecom Carrier Access, LLC d/b/a TCA<br>VOIP, and Telecom Carrier Access, Inc.<br>d/b/a TCA VOIP,<br>*Defendants* | Civil Action No. 5:22-CV-69 |

**First Amended Complaint**

## I.    Introduction

The Vermont Attorney General brings this suit against Defendants Dominic K. Bohnett, Telecom Carrier Access, LLC d/b/a TCA VOIP, and Telecom Carrier Access, Inc. d/b/a TCA VOIP for knowingly facilitating illegal robocalls to Vermont. On at least 132 occasions, Defendants have been put on notice that they are facilitating illegal robocalls into the United States. Defendants ignored the import of these notifications. Defendants can, if they so choose, see in near real-time that their call traffic consists primarily of illegal robocalls. But Defendants have chosen profits over legality, typically earning from $1,500 to $5,000 in revenue each weekday from their substantially illegal activity. In the process, Defendants have knowingly brought thousands—and likely hundreds of thousands—of illegal and fraudulent phone calls into the State of Vermont. Defendants have similarly brought in

hundreds of millions of illegal robocalls nationwide. Defendants' conduct violates the Telemarketing and Consumer Fraud and Abuse Prevention Act, the Telemarketing Sales Rule, the Telephone Consumer Protection Act, the Vermont Consumer Protection Act, and the Vermont Telephone Solicitation Act. For such violation, the Vermont Attorney General seeks injunctive relief, civil penalties, disgorgement, fees and costs, and other appropriate relief.

## II.   Jurisdiction and Venue

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1355; the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6103(e); the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310; and the Telephone Consumer Protection Act, 47 U.S.C. § 227(g)(2); this Court has pendant jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.     Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1395(a), 47 U.S.C. §§ 227(e)(6)(E), 227(g)(4), and 15 U.S.C § 6103(e). A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District.

3.     Plaintiff has notified the Federal Communications Commission ("FCC") of this civil action, pursuant to 47 U.S.C. § 227(g)(3).

4.     Plaintiff has notified the Federal Trade Commission ("FTC") of this civil action, pursuant to 15 U.S.C. § 6103(b).

### III.   Parties

5.     The Vermont Attorney General has a right to bring this action to protect Vermonters under the Telephone Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6103(a) and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227(e)(6), 227 (g)(1).

6.     The Vermont Attorney General is authorized under the Vermont Consumer Protection Act, 9 V.S.A. § 2458, to sue to enforce the Act's prohibitions on unfair and deceptive acts and practices in commerce.

7.     The Vermont Attorney General has the right to appear in any civil action in which the State has an interest.  3 V.S.A. § 157.  The Attorney General has interests in protecting to protect Vermonters from criminal frauds and to ensure that persons and entities doing business in Vermont do so in a lawful manner.

8.     Defendant Telecom Carrier Access, LLC d/b/a TCA VOIP (hereinafter "TCA VOIP") is a California Limited Liability Company with a principal place of business in Santa Barbara, California.

9.     Defendant Telecom Carrier Access, Inc. d/b/a TCA VOIP (hereinafter "TCA VOIP") may be a successor California corporation to Telecom Carrier Access, LLC with a principal place of business in Santa Barbara, California.

10.     TCA VOIP is a Voice over Internet Protocol "voice service provider" ("VSP").

11.     Defendant Dominic Bohnett is a resident of Santa Barbara, California. He is owner and operator of TCA VOIP.

12.     Dominic Bohnett, for all allegations, purposes, actions and failure to act alleged herein, *is* TCA VOIP.  Accordingly, all allegations herein involving TCA VOIP are likewise allegations regarding the conduct of Dominic Bohnett.

### IV.     Background Law

13.     The Vermont Consumer Protection Act ("CPA") prohibits "unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a).

14.     In interpreting the Act, Vermont courts are "guided by the construction of similar terms contained in Section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States." 9 V.S.A. § 2453(b).

15.     Pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108 ("TCFAPA"), the FTC has enacted a federal Telemarketing Sales Rule ("TSR") prohibiting robocalls absent limited exceptions. 16 C.F.R. § 310.3.

16.     In pertinent part, the TSR prohibits providing "substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates" certain other TSR provisions, 16 C.F.R. § 310.3, including:

   a. "Misrepresenting, directly or by implication, in the sale of goods or
      services …[a]ny material aspect of the performance, efficacy, nature, or

central characteristics of goods or services that are the subject of a sales

offer." 16 C.F.R. § 310.3(a)(2)(iii);

b.  "Misrepresenting... [a] seller's or telemarketer's affiliation with... any

person or government entity," 16 C.F.R. § 310.3(a)(2)(vii);

c.  "Making a false or misleading statement to induce any person to pay for

goods or services." 16 C.F.R. § 310.3(a)(4);

d.  Using "[t]hreats [or] intimidation." 16 C.F.R. § 310.4(a)(1);

e.  "Failing to transmit or cause to be transmitted the telephone number ...

to any caller identification service in use by a recipient of a

telemarketing call." 16 C.F.R. § 310.4(a)(8);

f.  "Initiating any outbound telephone call to a person when... [t]hat

person's telephone number is on the 'do-not-call' registry, maintained by

the [FTC]," 16 C.F.R. § 310.4 (b)(1)(iii)(B);

g.  "Initiating any outbound telephone call that delivers a prerecorded

message," unless certain limited exceptions are met, 16 C.F.R.

§ 310.4(b)(1)(v); and, *inter alia*,

h.  "[I]n an outbound telephone call... to induce the purchase of goods or

services[,] to fail to disclose truthfully, promptly, and in a clear and

conspicuous manner to the person receiving the call, ...[t]he identity of

the seller." 16 C.F.R. § 310.4(d)(1).

17.     The Telephone Consumer Protection Act (TCPA) prohibits persons

from sending robocalls into the United States without prior consent from the call-

recipients.  *See, e.g.*, 47 U.S.C. §§ 227(b)(1)(A) and 227(b)(1)(A)(iii) (prohibiting calls to cellular phones "using any automatic telephone dialing system or an artificial or prerecorded voice"); 47 U.S.C. § 227(b)(1)(B) (prohibiting calls to "any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party").

18.    Likewise, under the federal Truth in CallerID Act, a person cannot send robocalls into the United States that "cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." 47 U.S.C. § 227(e)(1).

19.    Finally, the Vermont Telephone Solicitation Act ("VTSA") regulates telephone solicitations in Vermont.  The VTSA prohibits telephone solicitations unless the caller is registered with the State of Vermont.  The VTSA prohibits phony CallerIDs and requires compliance with the FTC's Do Not Call Registry; and the VTSA requires disclosure of the caller's name and number when soliciting for money or anything of value.  9 V.S.A. § 2464a(b).

## V. Factual Background

### a. Dominic Bohnett and TCA VOIP are one and the same.

20.    This complaint alleges that Bohnett and TCA VOIP are *alter egos*. Dominic owns, manages and controls any and all significant operations of TCA VOIP. Accordingly, for purposes of this Complaint, "TCA VOIP" refers to both Dominic Bohnett and TCA VOIP.

### b. Scope of fraud Via the Telephone System

21.    As most persons with a phone in the United States have sadly learned, illegal robocalls have inundated the U.S. telecom system.

22.    Robocalls are machine-generated calls, often made by the hundreds simultaneously. They typically start with a pre-recorded message that is played when the called party answers.

23.    Fraudulent robocallers dial huge volumes of phone numbers, anticipating that many, many calls are needed to produce a single victim.

24.    A company called YouMail monitors robocall traffic through its approximately 10 million subscribers and "honeypots"—telephone numbers used simply to monitor call traffic.

25.    YouMail also records robocalls from subscribers and "honeypots."

26.    YouMail estimates, based upon its substantial information base, that there are approximately four billion robocalls per month in the U.S.

27.    YouMail further estimates that 32% of this robocall traffic is attempted criminal fraud.

28.     That 32% represents more than a billion attempts at criminal fraud against U.S. consumers via robocalls every month—approximately three attempts for every person in the U.S.

29.     A substantial number of these fraudulent robocalls—an estimated 1 in every 500—target residents of Vermont.

30.     The sources of these fraudulent calls are often overseas, anonymous, and therefore difficult for U.S.-based law enforcement agencies to identify, investigate, and bring to justice.

31.     However, foreign robocallers cannot reach a resident in Vermont or the U.S. without the knowing complicity of established domestic companies on the U.S. telecom network, such as TCA VOIP.

32.     Companies that route telephone calls from a caller to a call-recipient are called "voice service providers" (VSPs).  Illegal government and business imposter robocalls typically flow from foreign VSPs to domestic VSPs—and then to consumers—as follows.

33.     First, a foreign source originates an illegal robocall campaign.  That foreign source then sends the illegal robocall campaign over the Internet— sometimes through other foreign VSPs—to a smaller U.S.-based VSP.  Typically, the robocalls then travel from smaller U.S. VSPs to larger U.S. VSPs, and onward to the terminating carrier, such as cellphone companies Verizon Wireless or AT&T or a landline company such as Consolidated Communications or Comcast.

34. The domestic VSP that imports the robocall campaign charges the calling foreign source a small amount per call.

35. That domestic VSP then pays its next downstream VSP to route the call onward via other VSPs to the called party.

36. Hence, a fraudulent robocall frequently "hops" from a foreign entity through multiple domestic VSPs to the consumer.

37. *But for* the domestic VSPs that willingly establish business relationships with foreign entities and that knowingly accept those illegal robocalls, most government and business imposter robocalls could not and would not move through the U.S. and Vermont telecom systems to U.S. and Vermont residents.

38. The willing and complicit VSP in this case is TCA VOIP.

### c. Losses Caused by Illegal Robocalls

39. The Federal Trade Commission (FTC) maintains the FTC Consumer Sentinel database, which is a composite federal database that compiles, among other things, reports of fraud. FTC Consumer Sentinel indicates that, in 2021, consumers reported nearly $700 million in losses to fraud.

40. The FTC's Consumer Sentinel data suggest that around 36% of these frauds are perpetrated through telephone calls, an unspecified proportion of which are robocalls.

41. TrueCaller, an analyst of robocall traffic, suggests that actual consumer losses from robocall fraud are $30 billion per year.

42.    The TCPA estimated losses from illegal telemarketing at $40 billion per year.  15 U.S.C. § 6101(3).

43.    One of the most common kinds of fraudulent telephone calls is the government imposter robocall.  There, a foreign criminal syndicate or individual uses computer technology that automatically and simultaneously dials tens, hundreds or thousands of U.S. telephone numbers.  This computer technology can be referred to as an Automatic Telephone Dialing System (or "ATDS").

44.    These robocalls deliver a pre-recorded voice that purports to be from a government agent.  In the recording, the agent threatens the called party with fines, suspension or termination of government benefits, arrest, or other legal action—unless the call recipient presses "1" to speak to a purported government representative to resolve the concern.  If the call recipient presses "1," the recipient is routed to a live scammer, who then attempts to complete the crime by further deceiving the victim in order to obtain the victim's funds.  The scammer usually seeks to get those funds by instant electronic transfer.  One method is to have the victim purchase gift cards and then read the gift card numbers to the perpetrator, who converts those numbers into cash via an online gift card exchange.

45.    Another common kind of fraudulent telephone call is a business imposter robocall.  There, the robocalls purport to be from a private company, such as Amazon or Apple.  The pre-recorded message might relay, for example, that the call-recipient's credit card has been charged a large amount of money for an order, and request that the call-recipient press "1" to resolve the concern.  As in the

government imposter robocall scheme, if the called party presses "1," the called party is routed to a live scammer. The business imposter then strikes. For example, the imposter might claim there was an overcharge and request the victim's bank account number to process a refund. The scammer—or the criminal syndicate on behalf of which the scammer works—then uses that bank account information to steal funds from the victim.

46.     FTC Consumer Sentinel database analysis shows that fraudulent robocalls harm the entire U.S population, with older persons being the most vulnerable. Persons aged 20-29 report average fraud losses of $326. Persons aged 80 and over report average fraud losses of $1,300.

47.     These frauds not only victimize Vermonters; these frauds compromise the integrity of our national and state telephone infrastructure. Residents of the U.S., including Vermont, must now ignore telephone calls lest their time be wasted, or worse, that they be defrauded.

### d. The Traceback Process

48.     To identify which domestic VSPs facilitate illegal robocalls, the FCC appoints an independent organization to perform tracebacks of such calls, known as the Industry Traceback Group ("ITG"). Currently USTelecom, a telecom industry trade association, is the appointed as the ITG.

49.     In response to a report of an illegal robocall, ITG can trace the path that particular robocall took into and through the U.S.

50.     The FCC requires domestic VSPs to respond to ITG's traceback inquiries.

51.     Tracebacks are conducted in reverse, starting with the call as received by a phone or "honeypot," and then retracing the call path upward, carrier by carrier, to find the point of entry.

52.     First, ITG contacts the carrier that delivered the call to the consumer. ITG notifies the carrier of (a) the time and date of the call in question, (b) the calling number, (c) the called number, (d) the specific nature and content of the illegal robocall in question, and (e) the likely laws violated by the call. ITG usually provides the carrier with a link to an audio recording of the illegal robocall based on information obtained from YouMail. ITG then asks the carrier to identify which upstream VSP routed that call to it.

53.     Once the carrier identifies which upstream VSP routed the call in question, ITG contacts *that* upstream VSP. As it did with the previous carrier, ITG provides that VSP with notice of the nature and content of the illegal robocall, usually with a link to a recording of the call. Per its authority from the FCC, ITG likewise asks the upstream VSP to identify which further upstream VSP routed the call in question.

54.     By this method, ITG "asks" its way up the call-path, identifying the upstream domestic VSPs involved in facilitating the illegal robocall in question. The ITG puts each VSP on notice of the nature and content of that call. At some point in most tracebacks of government or business imposter fraud, a domestic VSP

reports to ITG that it received the call from a foreign customer. Thus, ITG—under FCC authority—identifies the VSP that served as the U.S. point of entry for the illegal robocall.

55.     Because robocalls are sent by the thousands, when ITG identifies which domestic VSP routed a single illegal robocall into the U.S., ITG has identified, in fact, which domestic VSP facilitated a campaign of thousands or even tens or hundreds of thousands of identical, illegal calls.

56.     Per ITG reporting, there are a relatively small number of domestic VSPs responsible for bringing the major share of government and business imposter fraud robocalls into the U.S., including TCA VOIP.

57.     Just ten VSPs are responsible as U.S. point of entry for one-third of all tracebacks of illegal calls from January 2020 through February 22, 2022.

58.     During 2020, ITG traced 1,973 calls determined to be illegal, at an average of 38 tracebacks per week.

59.     During 2021, ITG traced 2,794 calls determined to be illegal, at an average of 54 tracebacks per week. Of note, ITG has reported that, in 2021, 35% of its tracebacks were of illegal robocalls in which the caller fraudulently purported to be a representative of the United States Social Security Administration.

60.     Appendix A (filed March 18, 2022), is a true list of all ITG tracebacks to February 22, 2022, that point to TCA VOIP as the U.S. point of entry.

### e. __The Vermont Attorney General's Investigation of TCA VOIP__

61.     In partnership with the University of Vermont, the Vermont Office of Attorney General operates the Consumer Assistance Program ("CAP") where Vermonters can report fraud and obtain assistance with consumer concerns.

62.     The investigation in this matter began with a report to CAP from a resident of Essex Junction, Vermont. She reported she had received a Social Security imposter call.

63.     Specifically, she reported that, at 11:01 a.m. on May 10, 2021, she had received a phone call displaying a (false) Vermont CallerID of (802) 734-9964.  The caller delivered a pre-recorded message which stated: "You have a lawsuit being filed against you and all Social Security numbers, bank accounts, etc. will be blocked.  Press 1 to speak to an FBI agent."  CAP denominated this report as CAP Scam Report #450.

64.     This robocall was a government imposter fraud.  There is no other, benign explanation for the call.

65.     Accordingly, the Vermont Office of Attorney General ("VT-AGO") requested that ITG trace back this Social Security imposter robocall.

66.     ITG ran the traceback (designated traceback #4981).  At the conclusion of the traceback, ITG reported to the VT-AGO that TCA VOIP had been the U.S. point of entry for the illegal robocall campaign.

67.     As part of the traceback, ITG had sent TCA VOIP the following notification, indicating that the caller "fraudulently claim[ed] to be from the U.S.

Social Security Administration threatening problems with SS account. Potential TCPA violation and Consumer Protection Act violation":

| Call Details for Traceback #4981 0 seconds ago | |
|---|---|
| Campaign: | SSA-VT |
| Date/Time: | 2021-05-10 15:01:00 +0000 UTC |
| To: | +1802734█████ |
| From: | +18027349964 |

Caller fraudulently claims to be from US Social Security Administration threatening problems with SS account. Potential TCPA violation and Vermont Consumer Protection Act violation.

(The last four digits of the called telephone number are redacted for privacy.)

68.     Likewise, on May 19, 2021, a resident of St. Albans, Vermont, reported to CAP that he had received a government imposter robocall.  Specifically, he reported that he had received a call that day displaying a (false) Vermont CallerID of (802) 485-2264.  The phone call had delivered a pre-recorded message which stated: "You are being contacted by Agent [name redacted].  You must immediately put your work aside and respond to this message.  Press one to be connected to the investigation department.  If you do not press one immediately, you[r] matter will be referred to the investigation department."  CAP denominated this report as CAP Scam Report #494.

69.     This robocall was a government imposter fraud.  There is no other, benign explanation.

70.     The VT-AGO likewise requested that ITG traceback this illegal robocall.

71.     ITG ran the traceback (designated traceback #4995).  At the conclusion of its traceback, ITG reported to the VT-AGO that TCA VOIP was (again) the U.S. point of entry for the illegal robocall campaign.

72.     As part of the traceback, ITG sent TCA VOIP the following
notification, indicating that the caller "fraudulently claim[ed] to be from the U.S.
Social Security Administration threatening problems with SS account.  Potential
TCPA violation and Consumer Protection Act violation":

| Call Details for Traceback #4995 0 seconds ago | |
|---|---|
| Campaign: | SSA-VT |
| Date/Time: | 2021-05-19 16:25:00 +0000 UTC |
| To: | +1802497█████ |
| From: | +18024852264 |

Caller fraudulently claims to be from US Social Security Administration threatening problems with SS account. Potential TCPA violation and Vermont Consumer Protection Act violation.

(The last four digits of the called telephone number are redacted for privacy.)

73.     Based on these two tracebacks, among other information, the VT-AGO
commenced investigating TCA VOIP in greater depth, including the company's
traceback history generally.  With regard to tracebacks alone, the VT-AGO learned
as follows.

74.     Per ITG, TCA VOIP has one of the worst track records nationally as
shown by its frequency in appearing in tracebacks as the U.S. point of entry for
illegal robocalls.

75.     From January 1, 2020 to February 22, 2022, ITG conducted
approximately 3,794 tracebacks of calls determined to be illegal.  Through these
tracebacks, ITG has identified 174 domestic VSPs as points of entry for the illegal
robocalls to the U.S.

76.     Of these 174 VSPs, TCA ranks 4th highest in the number of times it
appeared as U.S. point of entry in ITG tracebacks.

77.     In the context of these 3,794 tracebacks, ITG identified TCA VOIP as the U.S. point of entry for 132 illegal robocalls campaigns, where each traceback means many thousands of identical, facilitated illegal robocalls.

78.     In 81 of these 132 tracebacks, TCA VOIP had facilitated government imposter robocall campaigns, including the following campaigns (as designated by ITG) and numbers of tracebacks to TCA VOIP for each such campaign:

| ITG Campaign Name | Tracebacks to TCA VOIP |
|---|---|
| CBP-GovtImpers | 4 |
| CBP-GovtImpers-P2 | 2 |
| DHS-GovImpers | 1 |
| Employment-EduMatch | 1 |
| FedReserv-Impers | 2 |
| GovSpoofing-P2 | 1 |
| LegalDept-Action | 4 |
| LegalDept-Action-P1 | 1 |
| Legal-Enforcement-Notice | 1 |
| LegalNotice-Identity | 1 |
| Medicare-Ineligible | 1 |
| Refund-CoronaFraud | 4 |
| Social Security Disability Consultant | 1 |
| SSA-CalltheSSA | 2 |
| SSA-CrimeandInvestigationDept VT | 1 |
| SSA-CrimeInvestigation | 1 |
| SSA-GiftCardLive | 1 |
| SSA-KindlyPressOne | 2 |
| SSA-LegalNotice | 3 |
| SSA-P1-BenefitsCanceled (GovtImpers) | 8 |
| SSA-P1-TexasFraud (GovtImpers) | 11 |
| SSA-RegretToInform | 2 |
| SSA-Various-P3(GovtImpers) | 1 |
| SSA-VT | 2 |
| StudentLoan-FederalSuspension | 1 |
| TestCall-StaySafeStayHome | 20 |
| TestCall-StaySafeStayHome-MD | 1 |
| USTreas-SSA-EnforceAction (GovtImpers) | 1 |
| **Total** | **81** |

See Appendix A (filed March 18, 2022) for detail and recordings of these calls.

79.   In 51 of the 132 tracebacks, TCA VOIP had facilitated business imposter robocall campaigns, including the following campaigns (as designated by ITG) and numbers of tracebacks to TCA VOIP for each such campaign:

| ITG Campaign Name | Tracebacks to TCA VOIP |
|---|---|
| Amazon-AuthorizeOrder | 10 |
| Amazon-SuspiciousCharge | 1 |
| Amazon-SuspiciousCharge-P | 11 |
| Apple-iCloud-AccountBreached | 7 |
| AutoWarranty-Extend2 | 2 |
| BizListing-VerifiedByGoogle | 1 |
| BofA-Chinese Voice Department | 1 |
| CCIRR-P1FinancialImpers | 1 |
| CCIRR-VisaAlert | 5 |
| Debt Reduction-Account Holder Impersonation | 3 |
| Hotel-ComplimentaryStay | 1 |
| Spoof-12/21/20 | 1 |
| Travel Scam-2 | 4 |
| Utility-30MinDisconnect | 9 |
| Utility-Discount | 1 |
| Utility-ElectricRebateCheck-P1 | 2 |
| Utility-Rate Reduction | 1 |
| **Total** | **51** |

See Appendix A (filed March 18, 2022) for detail and recordings of these calls.

80.     The 132 tracebacks showed that the TCA VOIP customers sending these calls were foreign, including the following providers.

| Upstream Voice Service Provider | Appearance in TCA VOIP tracebacks |
|---|---|
| Ace Peak Investments | 4 |
| Axkan Consultores | 8 |
| Dawz Telecom | 1 |
| Lets Dial SG pte ltd | 1 |
| My Country Mobile | 87 |
| Shayona Global | 21 |
| Softtop Limited | 1 |
| Techknowledge Open Systems | 2 |
| twiching | 7 |

81.    As example of one such traced government imposter call:

a.   On November 16, 2020, at 12:23 p.m., a resident of Waterbury, Vermont received a Social Security imposter robocall displaying a CallerID of 314-669-8757.  Upon report of the call, ITG traced the call to TCA VOIP as the robocall campaign's U.S. point of entry (Traceback #3652).

b.   That call transcribed by YouMail as follows: "Against your social security number by the Federal crime and investigation Department. We need to talk to you as soon as possible.  Again, this call is from Social Security Administration *** and to reach our department press one to call on same number I repeat press one now."  A recording of a similar YouMail-captured call is at this shortened URL: https://bit.ly/3tZhyla

c.   As part of that traceback (#3652), ITG sent TCA VOIP the following notification, indicating, among other things, that the caller "fraudulently claim[ed] to be from the U.S. Social Security Administration, Crime and Investigation Department, threatening problems with S[ocial] S[ecurity]

account.  Potential TCPA violation and Vermont Consumer Protection

Act violation":

| Call Details for Traceback #3652 (new) | |
|---|---|
| Date/Time: | 2020-11-16 17:23 UTC |
| To: | +1802233█████ |
| From: | +13146698757 |
| Campaign: | SSA-CrimeandInvestigationDept VT |

Caller fraudulently claims to be from US Social Security Administration, Crime and Investigation Department, threatening problems with SS account. Potential TCPA violation and Vermont Consumer Protection Act violation.

(The last four digits of the called telephone number are redacted for privacy and

because they contain YouMail intellectual property.)

82.     Of note, TCA VOIP's appearances in ITG tracebacks have been steady

over time.  TCA VOIP appeared in ITG tracebacks during 52 of the 80 weeks

leading up to February 22, 2022—more weekly appearances (during that time

period) than all but two VSPs nationally.

83.     TCA VOIP's 132 tracebacks showed the company facilitating illegal

robocalls to area codes in Vermont and 40 other states and the District of Columbia,

including AL, AR, AZ, CA, CO, CT, DC, DE, FL, GA, ID, IL, IN, KY, LA, MA, MD,

MI, MN, MO, MS, NC, ND, NE, NH, NJ, NM, NV, NY, OH, OK, OR, PA, SC, TN,

TX, UT, VA, VT, WA, WI, and WV.

84.     Subsequent analysis shows that TCA VOIP's illegal robocalls have

gone to every state in the United States.

85.     TCA VOIP's prevalence in ITG tracebacks demonstrates that TCA

VOIP has facilitated high numbers of illegal robocalls over an extended period of

time, was frequently notified by ITG that it was facilitating illegal robocalls, but

took insufficient steps to cease its business of profiting from illegal robocalls.

86.     As described below, TCA VOIP's call detail records confirm that the company knowingly facilitated thousands—if not millions—of illegal robocalls into the U.S. and Vermont and did so for profit.

### f.  What TCA VOIP's Call Detail Records Show

87.     VSPs like TCA VOIP maintain minute-by-minute, detailed "call detail records" (CDRs) for each telephone call they relay for billing purposes and accountability.

88.     For each such call, CDRs show:

   a.  The exact date and time of the call;

   b.  Which customer (of the VSP) sent the call;

   c.  The calling number / CallerID displayed;

   d.  The called number; and, among other call characteristics,

   e.  The exact duration of the call, in seconds.

89.     VSPs maintain CDRs in part to inform and justify their billing of customers.

90.     VSPs can review their CDRs in near real-time, can sample a portion of their call traffic's *content*, and can stop the fraud within minutes.

91.     Indeed, TCA VOIP has a switch or "software provider," 46Labs, that uses YouMail analytics that can conduct near real-time analysis of whether TCA VOIP's calls are likely fraudulent.

92.     Through reviews and analyses of CDRs, VSPs such as TCA VOIP can see whether they are likely facilitating illegal robocalls.  CDRs of illegal calls show a

distinct and unmistakable pattern that puts the VSP on notice of the need for immediate further investigation and sufficient action to address the illegal traffic:

a.  The caller sends a high volume of calls with very short Average Call Duration ("ACD").

b.  Most of the calls (98%) are connected less than 1 minute (because the call is disconnected by the called party).  Many calls last under 15 seconds.

c.  Few calls are more than two minutes.

d.  A fraction of calls last over 20 minutes.  These are the calls in which the caller has engaged with the scammer and is potentially being defrauded.

e.  Despite the caller being based outside of the U.S., the calling numbers sent with the calls are U.S. telephone numbers.  Often, the area codes of the calling numbers and often the local exchange will be designed to match the called numbers, in what is called "neighborhood spoofing." Criminal syndicates use "neighborhood spoofing" to trick the call recipient into believing the call is from a local resident or business, thereby increasing the chances the call recipient will answer.  Because almost all of TCA VOIP's customers are foreign VSPs, there is no plausible reason for a new, local CallerID to be displayed for every two calls made, other than fraud.

f. A high percentage of calls are to wireless phone numbers and numbers on the FTC's Do Not Call list. That is, the call source is operating without regard to U.S. telemarketing laws.

g. There are numerous calls with no plausible legitimacy, such as calls using invalid area codes, 911 as an area code, invalid lengths (too long or too short), or invalid (non-existent) prefixes. In these situations, the source of the robocalls is making no pretense that calls have valid CallerIDs.

### g. Meeting with TCA VOIP Representatives August 19, 2021

93.     In an attempt to alert TCA VOIP to its prominence in facilitating illegal robocalls and to dissuade it from continuing this conduct, representatives of law enforcement from Vermont and the Social Security Administration Office of Inspector General ("SSA OIG") met virtually with representatives of TCA VOIP on August 19, 2021. Based on data from the FTC Consumer Sentinel, the law enforcement officials explained to TCA VOIP the extensive financial losses of robocall victims. Law enforcement officials then presented behavioral analytics from TCA VOIP's own CDRs showing that TCA VOIP was facilitating illegal robocalls.

94.     At that point, Vermont was looking at a smaller slice of TCA VOIP traffic—for calls from two of TCA VOIP's foreign customers, Axkan and Shayona Global. TCA VOIP had sent calls from Axkan on May 10, 2021, and from Shayona

Global on May 19, 2021.  The analytics shared included traceback analysis, SSA OIG analysis and CDR analysis, including:

    a. TCA VOIP sent 574,866 answered calls from Axkan on May 10th.  TCA VOIP sent 284,346 from Shayona Global on May 19th.

    b. Of these calls, Average Call Duration ("ACD") were 17 seconds for Axkan calls, and 15 seconds from Shayona Global, indicating that the calls were unwanted.

    c. Of these calls, 99% lasted less than 60 seconds, and 0.2% (1,543 calls) lasted more than 3 minutes.

    d. The calls included 1420 calls to Vermont area code 802, including the two that were reported to CAP and traced back.

    e. Similarly, the SSA OIG analysis showed that for the 14 most frequent CallerIDs displayed—consisting of 13,568 calls—in 10,738 of the calls YouMail data showed the calls contained government or business imposter scams, legal threats, arrest threats or utility cut-off threats.

95.    In response to this presentation from law enforcement, Dominic Bohnett and his then-associate Mark Jordan indicated that they took this (fraudulent) "short duration traffic" "because they give us business."

96.    In that meeting, TCA VOIP indicated that it would work to address illegal robocalls from its upstream providers, but also indicated that it needed the business from My Country Mobile, TCA VOIP's biggest customer.

h. **August 17, 2021, Call Detail Records and Analysis**.

97.     Vermont subsequently analyzed all TCA VOIP traffic on August 17, 2021.

98.     The August 17, 2021 traffic analysis showed:

a. TCA VOIP attempted 21,559,976 calls across the U.S., including 28,642 attempted calls to Vermont area code 802.

b. Of the 1,608,161 calls that TCA VOIP completed on that day, the Average Call Duration ("ACD") was 15 seconds—indicating that the calls were quickly rejected by most recipients as unwanted.

c. In 98.6% of the calls, the calls were disconnected in 60 seconds or less, again indicating that the called parties rejected the calls once the calls were recognized for their unwelcome—and often fraudulent—voice content.

d. For most upstream customers, TCA VOIP used a new and false CallerID more often than every-other call. In other words, CallerIDs were displayed only an average of 1.6 times before a new, false CallerID was generated. These were foreign customers using new, fake CallerIDs (1) to trick call recipients into thinking a neighbor was calling, (2) to prevent terminating providers from identifying and labeling the CallerID as "spam" and (3) to avoid carrier spam call-blocking technologies.

e. Of the 1.6 million calls, 4,512 calls lasted more than 3 minutes.

f. The concerning calls—where people are victimized—are the fraction of calls lasting more than 20 minutes, in this day just 231 calls.

i. **August 30, 2021, Call Detail Records and Analysis**.

99. Despite the assurances of TCA VOIP, it continued to facilitate unlawful traffic. CDRs from TCA VOIP on August 30, 2021, demonstrate that it completed 4,619,062 calls that day, including 3,015,165 calls from My Country Mobile, its principal customer throughout this investigation.

100. My Country Mobile is a foreign VSP, apparently based in India.

101. The CDRs for these 3,015,165 calls on August 30, 2021 from My Country Mobile revealed that many were highly likely illegal robocalls.

a. The CDRs reflected a high volume of short-duration calls. For the 3,015,165 calls from My Country Mobile, the Average Call Duration was just 14 seconds. Thus, for these 3 million calls, the called party typically answered the phone and quickly hung up: the calls were uniformly unwanted. 99.1% of the calls lasted less than one minute. Only 0.2% (6,647) of the calls lasted longer than two minutes. There is no benign explanation for this call traffic pattern.

b. Second, across the 3,015,165 calls, despite being foreign in source, the calling numbers (or CallerIDs displayed) were U.S. telephone numbers. Generally, the area code of the calling number matched the area code of the called number. Given the broader context (of a high volume of short

duration calls), this is obvious "neighbor spoofing"—another hallmark of fraud.

c. Lastly, the ratio of called numbers to CallerIDs displayed was exceedingly low. For every 1.65 calls dialed, a new CallerID was displayed. Again, given the broader context (of a high volume of short duration, likely "spoofed" calls), there is no benign explanation for this ratio. The calling source was generating new numbers for each 1 or 2 calls to avoid detection as fraudulent and being blocked by downstream VSPs. The robocalls were obviously fraudulent.

102. The CDRs also showed that TCA VOIP blocked all calls to area code 802 in an effort to discourage Vermont's ongoing enforcement efforts. This blocking of area code 802 while continuing to route the calls to other area codes shows starkly that TCA VOIP intended to continue facilitating illegal traffic. Indeed, this area code 802 blocking appears to be the only significant action TCA VOIP took in response to Vermont's investigation. The area code 802 blocking is an admission that TCA VOIP would continue to handle fraudulent traffic. However, TCA VOIP calls continue to come to Vermont in significant volumes, to mobile phones in Vermont with area codes other than 802.

103. The Vermont Office of Attorney General informed TCA VOIP of these findings of continued illegal traffic by email on September 9, 2021.

104. Rather than concede the obvious—that TCA VOIP had determined that it would continue to host fraudulent traffic—TCA VOIP responded: "The traffic

is 99.999% legitimate with 1 out of 100 million fraudulent calls." TCA VOIP denied it was "willfully blind as to the illegal character of that traffic," adding, "It is not the balance I want but it's the business we reach."

105.    Accordingly, to show to TCA VOIP that its claim of handling mostly benign traffic was false, the Vermont Attorney General requested YouMail to match TCA VOIP's August 30, 2021 CDRs with YouMail's database of recorded calls.

106.    YouMail found by content-analysis that TCA VOIP was facilitating substantial fraud that day.  For instance, here is one call YouMail identified with Social Security fraud: "We are calling you from the Department of Social Security Administration.  The reason you have received this phone call from our department is to inform you that there is a legal enforcement actions filed on your social security number for fraudulent activities.  So, when you get this message, kindly press one to connect with the next available officer.  Thank you." The recording is at this URL redirect: https://bit.ly/3CCOX7S

107.    Here is another example of TCA VOIP facilitated government imposter fraud on August 30th, with this recording from YouMail: "Hi.  This is Officer [name redacted] calling you from the legal department. The very second you receive this message you need to leave your work so that we can discuss about your case and take necessary action on this matter.  In order to connect federal agents, press one and you will be connected to the concerned department.  If we don't hear from you, then we will be forced to take legal action against you.  Press one and you will be

connected to the concerned department." The recording is at this URL redirect: https://bit.ly/3vXtPIh

108.   Ultimately, the YouMail content-analysis, as expected, showed that TCA VOIP continued to facilitate very substantial levels of fraud.

109.   When informed of these results, TCA VOIP continued to insist that it was not responsible; that it was doing more; and that it could become "an informant for the FCC." September 13, 2021. "It's like direct mailers, not popular but is a legitimate business." October 11, 2021.

110.   But TCA VOIP continued to facilitate illegal robocalls and continued to show up in ITG tracebacks. See Appendix A.

### j.   December 15, 2021 Call Detail Records and Analysis

111.   TCA VOIP's CDRs from December 15, 2021, reflect TCA VOIP's continued efforts to facilitate illegal robocalls.

112.   That day, TCA VOIP relayed 10,253,130 completed calls from 42 customers (a large increase in customers).

113.   The CDRs for these calls reflect, again, that TCA VOIP's call traffic consisted almost entirely of illegal robocalls. That is:

     a.   The call traffic consisted of a high-volume of short-duration calls. Over 98.9% of the calls lasted under 60 seconds.

     b.   The Average Call Duration was 13 seconds, indicating that the calls were unwanted.

    c.   The ratio of calling numbers to called numbers was about 2, meaning that a new, false CallerID was displayed after only two calls.

    d.   Analysis showed that 42% of the calls were to phone numbers listed on the FTC Do Not Call list, and 71% of calls were to cellphones.

114.    YouMail's subsequent content-analysis of this TCA VOIP call traffic identified that many of the calls were in fact fraudulent.  For example, one such call (showing CallerID 805-712-1120) was clear Social Security fraud, saying: "This call is from federal agency to suspend your Social Security number on an immediate basis, as we have received suspicious trails of information with your name.  The moment you receive this message, you need to get back to us to avoid the consequences.  To connect the call immediately press one."  https://bit.ly/3IPG6Bn

### k.  TCA VOIP's Conduct & Response During Eight Months of Investigation

115.    Since August 14, 2020—the date ITG first conducted a traceback identifying TCA VOIP as the point of entry for illegal robocalls U.S. point of entry—TCA VOIP has relayed approximately 50 million call attempts per business day, and an estimated 3 to 10 million completed calls per business day.

116.    These calls have gone to every state in the United States.

117.    As reflected in the 132 tracebacks implicating TCA VOIP and TCA VOIP's CDRs and related YouMail data, the majority of these calls were illegal robocalls.

118.   Indeed, Vermont has analyzed approximately 1.4 billion attempted calls that TCA VOIP relayed from abroad into the U.S. over 180 days.  In this analysis, Vermont found 886 million attempted calls from My Country Mobile.  The completed My Country Mobile calls have an Average Call Duration of less than 13 seconds, indicating that—like TCA VOIP's call traffic generally—the typical called party quickly rejected each call.  Less than 0.3% of My Country Mobile's calls lasted more than two minutes.

119.   Since the VT-AGO commenced investigating TCA VOIP on or around June 25, 2021, the State has repeatedly notified TCA VOIP of manner in which its call traffic self-evidently consists of illegal robocalls.

120.   In response, through eight months of investigation, TCA VOIP has offered no evidence that its robocall traffic is legal traffic.  Moreover, TCA VOIP has made no effective effort to reform its conduct.  TCA VOIP could have suspended its operations pending the implementation of new customer screening or call monitoring practices.  It did not.  TCA VOIP could have terminated particular customers pending a review of their call traffic.  It did not.  TCA VOIP could have implemented effective analytic technology to monitor its call traffic patterns in real-time to identify and block illegal robocalls.  It did not.  Instead, aside from modest adjustments, TCA VOIP has continued to facilitate obviously illegal robocalls-and profit from doing so.

121.   Even TCA's modest adjustments reflected the company's awareness that its primary business is to facilitate illegal robocalls.  For example, as

mentioned above, in the late summer of 2021, in response to the State of Vermont's investigation, TCA VOIP commenced blocking all calls to area code 802.  Such efforts do not impact the 2% to 4% of Vermonters with phone numbers other than area code 802.

122.   Other recent conduct by TCA VOIP indicates its effort to evade accountability.  The VT-AGO had asked TCA VOIP to place a litigation hold on CDRs during this investigation.  But TCA VOIP is deliberately allowing its CDRs to be destroyed by means of a very short CDR retention policy.  As the VT-AGO ramped up its requests to TCA VOIP for CDRs based on improved access to tracebacks, TCA VOIP advised its switch or software provider on January 10, 2022: "The AG's have gotten faster.  The latest request is for Dec 13th forward.  Can you verify that the oldest is rolling off and I have 90 days of data?"

123.   TCA VOIP continues knowingly and willingly to provide a telecom platform for illegal robocalls, including criminal fraud, and to profit from every such call while doing so.

## l. **Losses to Vermont residents & Earnings of TCA VOIP from Illegal Robocalls.**

124.   Based on TCA VOIP's call volume, YouMail data on robocalls, and FTC Consumer Sentinel data on telephone fraud losses, it is estimated that TCA VOIP's knowing facilitation of illegal call traffic contributed substantial earnings to foreign criminal fraud syndicates by defrauding U.S. consumers—including Vermont

consumers—of somewhere between $116 million (based on FTC Consumer Sentinel data) to $3.5 billion (based on TrueCaller estimates).

125.    Since the first traceback pointing to TCA VOIP on August 14, 2020, it is estimated that TCA VOIP has earned a gross income of $1.25 million from facilitating call traffic.  A substantial portion of this revenue is from knowingly facilitating illegal robocalls, including outright fraudulent robocalls to Vermont.

## VIOLATIONS
### VIOLATIONS OF THE TELEMARKETING SALES RULE

### Count I
### Assisting and Facilitating Illegal Robocalls
### in Violation of 16 C.F.R. § 310.3(a)(2)(iii)

1.    Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.    In 1994, Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101-6108 (the "Telemarketing Act").  Pursuant to that authority, the FTC adopted the Telemarketing Sales Rule, 16 C.F.R. § 310.1 et seq (TSR).

3.    Any State Attorney General is authorized to bring an action under the Telemarketing Act and TSR.  16 C.F.R. § 310.7.

4.    Under the TSR, it is a deceptive telemarketing act or practice and a violation of the TSR for a person to provide substantial assistance or support to a seller or telemarketer when that person knows or consciously avoids knowing that

the seller or telemarketer is engaged in any act or practice that violations TSR
Sections 310.3(a), (c), (d) or 310.4. 16 C.F.R. § 310.3(b).

5.      The TSR prohibits misrepresenting, directly or by implication, in the
sale of goods or services, any material aspect of the performance, efficacy, nature, or
central characteristics of goods or services that are the subject of a sales offer.  16
C.F.R. § 310.3(a)(2)(iii).

6.      In numerous instances, Defendants violated 16 C.F.R. § 310.3(b) by
providing substantial assistance or support, through the provision of their services,
to sellers or telemarketers who Defendants knew or consciously avoided knowing
were transiting government imposter or business imposter robocall campaigns to
Vermont residents which materially misrepresented the nature and central
characteristics of the goods and services they were offering, in violation of 16 C.F.R.
§ 310.3(a)(2)(iii).

## Count II
## Assisting and Facilitating Illegal Robocalls
## in Violation of 16 C.F.R. § 310.3(a)(2)(vii)

1.      Plaintiff incorporates and realleges each of the foregoing paragraphs
as if fully set forth herein.

2.      The TSR prohibits misrepresenting, directly or by implication, in the
sale of goods or services, a seller's or telemarketer's affiliation with, or endorsement
or sponsorship by, any person or government entity.  16 C.F.R. § 310.3(a)(2)(vii).

3.     In numerous instances, Defendants violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support, through the provision of their services, to sellers or telemarketers who Defendants knew or consciously avoided knowing were transiting government imposter and business imposter robocall campaigns to Vermont residents which misrepresented, directly or by implication, a seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity in the sales of goods or services, in violation of C.F.R. § 310.3(a)(2)(vii).

## Count III
## Assisting and Facilitating Illegal Robocalls
## in Violation of 16 C.F.R. § 310.3(a)(4)

1.     Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.     Under the TSR, it is a deceptive telemarketing act or practice and a violation of the TSR for any seller or telemarketer to make a false or misleading statement to induce any person to pay for goods or services.  16 C.F.R. § 310.3(a)(4).

3.     In numerous instances, Defendants violated 16 C.F.R. § 310.3(a)(4) by providing substantial assistance or support, through the provision of their services, to sellers or telemarketers who Defendants knew or consciously avoided knowing were transiting government imposter and business imposter robocall campaigns to Vermont residents which made false or misleading statements to induce said residents to pay for goods or services in violation of 16 C.F.R. § 310.3(a)(4).

## Count IV
## Assisting and Facilitating Illegal Robocalls
### in Violation of 16 C.F.R. § 310.3(a)(4)(1)

1.    Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.    Under the TSR, it is a deceptive telemarketing act or practice and a violation of the TSR for any seller or telemarketer to use threats or intimidation in telemarketing.  16 C.F.R. § 310.4(a)(4)(1).

3.    In numerous instances, Defendants violated 16 C.F.R. § 310.3(b)  by providing substantial assistance or support, through the provision of their services, to sellers or telemarketers who Defendants knew or consciously avoided knowing were transiting government imposter and business imposter robocall campaigns making using threats or intimidation to Vermont residents to induce said residents to pay for goods or services in violation of 16 C.F.R. § 310.3(a)(4)(1).

**Count V**
**Assisting and Facilitating Illegal Robocalls**
**in Violation of 16 C.F.R. § 310.4(a)(8)**

1.      Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.      Under the TSR, it is an abusive telemarketing act or practice and a violation of the TSR for any seller or telemarketer to fail to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call.  16 C.F.R. § 310.4(a)(8).

3.      In numerous instances, Defendants violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support, through the provision of their services, to sellers or telemarketers who Defendants knew or consciously avoided knowing were transiting government imposter and business imposter robocall campaigns to Vermont residents which failed to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call, in violation of 16 C.F.R. § 310.4(a)(8).

## Count VI
## Assisting and Facilitating Illegal Robocalls
## in Violation of 16 C.F.R. § 310.4(b)(1)(iii)(B)

1.      Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.      Under the TSR, it is an abusive telemarketing act or practice and a violation of the TSR for any seller or telemarketer to initiate any outbound telephone call to a person when that person's telephone number is on the "do-not-call" registry, maintained by the FTC, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services.

3.      In numerous instances, Defendants violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support, through the provision of their services, to sellers or telemarketers who Defendants knew or consciously avoided knowing were initiating outbound telephone calls to a resident of Vermont when that person's telephone number was on the FTC "do-not-call" registry in violation of 16 C.F.R. § 310.4(b)(1)(iii)(B).

### Count VII
### Assisting and Facilitating Illegal Robocalls
### in Violation of 16 C.F.R. § 310.4(b)(1)(v)

1.      Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.      Under the TSR, it is an abusive telemarketing act or practice and a violation of the TSR for any seller or telemarketer to engage in initiating any outbound telephone call that delivers a prerecorded message, absent certain exceptions.  16 C.F.R. § 310.4(b)(1)(v).

3.      In numerous instances, Defendants violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support, through the provision of their services, to sellers or telemarketers who Defendants knew or consciously avoided knowing were initiating outbound telephone calls to Vermont residents which telemarketers delivered pre-recorded messages, including government imposter robocall campaigns and business imposter robocall campaigns, in violation of 16 C.F.R. § 310.4(b)(1)(v).

## Count VIII
## Assisting and Facilitating Illegal Robocalls
### in Violation of 16 C.F.R. § 310.4(d)(1)

1.      Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.      Under the TSR, it is an abusive telemarketing act or practice and a violation of the TSR for a telemarketer in an outbound telephone call, to induce the purchase of goods or services, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call the identity of the seller. 16 C.F.R. § 310.4(d)(1).

3.      In numerous instances, Defendants violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support, through the provision of their services, to telemarketers who Defendants knew or consciously avoided knowing were transiting government imposter and business imposter robocall campaigns to Vermont residents which telemarketers, to induce the purchase of goods or services, failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call the identity of the seller, in violation of 16 C.F.R. § 310.4(d)(1).

VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

## Count IX
## Making Robocalls to Cellular Phones
## in Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

1.      Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.      Section 227(b) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits any person within the United States, or any person outside the United States if the recipient is within the United States, from making any call using an automatic telephone dialing system or an artificial or prerecorded voice to any cellular telephone, with exceptions for certain emergency calls or calls placed with the prior express consent of the called party.  47 U.S.C. § 227(b)(1)(A)(iii).

3.      Any State Attorney General is authorized to bring an action for violations of the TCPA when that Attorney General has reason to believe that any person has engaged or is engaging in a pattern or practice of telephone calls or other transmissions to residents of that State in violation of the TCPA.  47 U.S.C. § 227(g)(1).

4.      Defendants engaged in a pattern or practice of making telephone calls to cellular telephone numbers in Vermont in violation of 47 U.S.C. § 227(b)(1)(A)(iii), including government imposter and business imposter robocalls campaigns.

**Count X**

**Making Robocalls to Residential Phones**

**in Violation of 47 U.S.C. § 227(b)(1)(B)**

1.    Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.    The TCPA prohibits any person within the United States, or any person outside the United States if the recipient is within the United States, from initiating any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, or is exempted by rule or order by the FCC under 47 U.S.C. § 227(b)(1)(B).

3.    Upon information and belief, Defendants engaged in a pattern or practice of initiating telephone calls to residential telephone lines, including telephone lines in Vermont, using artificial or prerecorded voices to deliver a message without the prior express written consent of the called party in violation of 47 U.S.C. § 227(b)(1)(B).

## Count XI

## Using Misleading or Inaccurate

## Caller Identification Information

## in Violation of 47 U.S.C. § 227(e)(1)

1.      Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.      Under 47 U.S.C. § 227(e)(1), it is unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States, in connection with any voice service or text messaging service, to cause any caller identification service knowingly to transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B).

3.      Under 47 U.S.C. § 227(e)(6), the chief legal officer of a State may bring a civil action, as *parens patriae*, on behalf of the residents of that State in an appropriate district court of the United States to enforce 47 U.S.C. § 227(e)(1).

4.      Upon information and belief, Defendants violated 47 U.S.C. § 227(e)(1) by knowingly causing a caller identification service to transmit to residents of Vermont misleading or inaccurate caller identification information, in connection with any voice service or text messaging service, with the intent to defraud, cause harm, or wrongfully obtain anything of value.

## VIOLATIONS OF VERMONT TELEMARKETING LAWS
### Count XII
### Making Telephone Solicitations
### in Violation of 9 V.S.A. § 2464a(b)(2)

1. Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2. It is a violation of Vermont law to make any telephone call to a telephone number in Vermont that violates the Federal Trade Commission's Do Not Call Rule, 16 C.F.R. subdivision 310.4(b)(1)(iii).  9 V.S.A. § 2464a(b)(2).

3. A violation of 9 V.S.A. § 2464a constitutes a violation of the Vermont Consumer Protection Act, 9 V.S.A. § 2453.

4. The Office of the Vermont Attorney General may bring a civil action to enforce against violations of 9 V.S.A. § 2453.  9 V.S.A. § 2458.

5. Defendants made at least one telephone call to a telephone number in Vermont in violation of the Federal Trade Commission's Do Not Call Rule, 16 C.F.R. subdivision 310.4(b)(1)(iii), thereby violating 9 V.S.A. § 2464a(b)(2).

### Count XIII
### Failing to Provide Accurate Caller Identification Information
### in Violation of 9 V.S.A. § 2464a(b)(3)(A)

1. Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.      Under 9 V.S.A. § 2464a(b)(3)(A), a person who places a telephone call to make a telephone solicitation or to induce a charitable contribution, donation, or gift of money or other thing of value shall transmit or cause to be transmitted to a caller identification service in use by the recipient of the call both the caller's telephone number and, if made available by the caller's carrier, the caller's name.

3.      Defendants violated 9 V.S.A. § 2464a(b)(3)(A) by placing at least one telephone call to a telephone number in Vermont with false caller identification information.

## VIOLATIONS OF THE VERMONT CONSUMER PROTECTION ACT

### Count XIV
### Violations of the Vermont Consumer Protection Act

1.      Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

2.      The Vermont Consumer Protection Act prohibits unfair or deceptive acts or practices in commerce.  9 V.S.A. § 2453(a).

3.      The Office of the Vermont Attorney General may bring a civil action to enforce against violations of 9 V.S.A. § 2453(a).  9 V.S.A. § 2458.

4.      Defendants have engaged and are continuing to engage in unfair acts and practices in commerce, in violation of the Vermont Consumer Protection Act, 9 V.S.A. § 2453(a), which offend the public policy and laws as expressed in state and federal laws governing robocalls, such as those enumerated above; are immoral, unethical, oppressive and unscrupulous; and cause substantial injury to consumers

which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

5.     Defendants have engaged and are continuing to engage in deceptive acts and practices in commerce, in violation of the CPA, 9 V.S.A. § 2453(a), by (1) knowingly routing to Vermont phone numbers robocalls that misrepresent an affiliation with governmental agencies or business entities or are otherwise fraudulent; (2) declining to block these calls from Vermont, despite its power to do so; and (3) directly benefiting from this conduct, earning revenue for each completed call.

## Prayer for Relief

WHEREFORE, Plaintiff requests this Court:

1.     Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this Complaint.

2.     Enter judgment and against all and award Plaintiff civil penalties up to $43,792 for each violation of the TSR, and award Plaintiff such relief as the Court finds necessary to redress injury to consumers resulting from said Defendants' violations of the TSR, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.

3.     Enter a permanent injunction to prevent future violations of the TSR by Defendants.

4.     Assess against Defendants damages of one thousand five hundred dollars ($1500) for each violation of the TCPA found by the Court to have

committed by said willfully and knowingly; if the Court finds that Defendants have engaged in violations of the TCPA that are not willful and knowing, then assessing against said Defendants damages of five hundred dollars ($500) for each violation of the TCPA, as provided by 47 U.S.C. §227.

5.   Permanently enjoin Defendants from violating the TCPA, both generally and specifically, by enumerating the acts in which Defendants are permanently enjoined from engaging.

6.   Permanently enjoin all Defendants, their agents, representatives, employees, and assigns and any other person acting on behalf of any from engaging in acts prohibited by Vermont law, including specifically making, causing to be made, or the assisting and facilitating in telephone sales calls to telephone numbers of Vermonters in violation of 9 V.S.A. §§ 2453(a), 2464a(b)(2); the Federal Trade Commission's Do Not Call Rule, 16 C.F.R. subdivision 310.4(b)(1)(iii), and/or the Federal Communication Commission's Do Not Call Rule, 47 C.F.R. subdivision 64.1200(c)(2) and subsection (d), as amended from time to time.

7.   Permanently enjoin Defendants, their agents, representatives, employees, and assigns and any other person acting on behalf of any from transmitting or causing the transmission of misleading or inaccurate caller identification information to Vermont telephone numbers in violation of 9 V.S.A. § 2453(a).

8.   Order Defendants, jointly and severally, to pay

    a.  a civil penalty of ten thousand dollars ($10,000) for each violation pursuant to 9 V.S.A. § 2458(b)(1);

    b.  an order for restitution pursuant to 9 V.S.A. § 2458(b)(2); and

    c.  an order requiring reimbursement to the State of Vermont for the reasonable value of its services and its expenses in investigating and prosecuting the action, pursuant to 9 V.S.A. § 2458(b)(3).

9. Award Plaintiff such other and additional relief as the Court may determine to be just and proper.

Dated: April 13, 2022

STATE OF VERMONT

THOMAS J. DONOVAN JR.
ATTORNEY GENERAL

By:

Edwin L. Hobson
Jamie Renner[1]
*Assistant Attorneys General*
Office of Attorney General
109 State Street
Montpelier, Vermont 05609
ted.hobson@vermont.gov
(802) 828-3171

Attachment

Appendix A – Tracebacks by ITG Showing Defendants at the Point of Entry for
            Illegal Robocalls (filed March 18, 2022)

---

[1] Application for admission pending.