U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 SEP -9  PM 3: 05

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

STATE OF VERMONT,                          )
                                           )
        Plaintiff,                         )
                                           )
    v.                                     )          Case No. 5:22-cv-69
                                           )
DOMINIC BOHNETT, TELECOM                   )
CARRIER ACCESS, LLC d/b/a TCA VOIP,        )
and TELECOM CARRIER ACCESS, INC.           )
d/b/a TCA VOIP,                            )
                                           )
        Defendants.                        )

**OPINION AND ORDER**
**(Doc. 18)**

The State of Vermont sues Dominic Bohnett, Telecom Carrier Access, LLC d/b/a TCA

VOIP, and Telecom Carrier Access, Inc. d/b/a TCA VOIP for "knowingly facilitating illegal

robocalls to Vermont" in violation of the Telemarketing and Consumer Fraud and Abuse

Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6103; the Telemarketing Sales Rule ("TSR")

that implements the Telemarketing Act, 16 C.F.R. § 310; the Telephone Consumer Protection

Act ("TCPA"), 47 U.S.C. § 227; the Vermont Consumer Protection Act ("VCPA"), 9 V.S.A.

§ 2453; and the Vermont Telephone Solicitation Act ("VTSA"), 9 V.S.A. § 2464a.  (Doc. 8 at 1–

2.)  Both corporate defendants (collectively, "TCA VOIP") have filed answers.  (Doc. 17.)  Mr.

Bohnett has filed a Rule 12(b)(6) motion to dismiss the claims against him, arguing that the State

has alleged only that he is the primary owner and manager of TCA VOIP, and that such

allegations are insufficient to pierce the corporate veil and hold him liable on an alter-ego theory.

(Doc. 18.)  The State opposes the motion (Doc. 26) and Mr. Bohnett has filed a reply (Doc. 28).

### Background

The State's 50-page First Amended Complaint ("FAC") includes numerous factual allegations in support of the State's claims that Defendants knowingly facilitated illegal robocalls into the United States. The State has set forth allegations regarding alleged fraud via the telephone system; losses caused by illegal robocalls; a "traceback" process to identify domestic voice service providers who facilitate illegal robocalls; what TCA VOIP's call detail records show; law enforcement investigation and analysis; and alleged losses to Vermont residents and earnings by foreign criminal fraud syndicates. (*See* Doc. 8 ¶¶ 21–125.) Only four paragraphs of the FAC mention Mr. Bohnett by name. Two of those paragraphs appear in a section identifying the parties in the case. Paragraph 11 states that "Dominic Bohnett is a resident of Santa Barbara, California. He is owner and operator of TCA VOIP." (*Id.* ¶ 11.) Paragraph 12 states that "Dominic Bohnett, for all allegations, purposes, actions and failure to act alleged herein, *is* TCA VOIP. Accordingly, all allegations herein involving TCA VOIP are likewise allegations regarding the conduct of Dominic Bohnett." (*Id.* ¶ 12.)

The first paragraph of the FAC's "Factual Background" section states: "This complaint alleges that Bohnett and TCA VOIP are *alter egos*. Dominic owns, manages and controls any and all significant operations of TCA VOIP. Accordingly, for purposes of this Complaint, 'TCA VOIP' refers to both Dominic Bohnett and TCA VOIP." (*Id.* ¶ 20.) Finally, in a subsection of the "Factual Background" regarding an August 19, 2021 meeting between law enforcement and TCA VOIP representatives, the FAC alleges that Mr. Bohnett "and his then-associate Mark Jordan indicated that they took this (fraudulent) 'short duration traffic' 'because they gave us business.'" (*Id.* ¶ 95.)

<u>Analysis</u>

## I.   Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2).  The court must also draw all reasonable inferences in the non-moving party's favor.  *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016).  Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

## II.   Individual Liability

The parties disagree as to the source of law for evaluating individual liability in this case. Citing *Hoehl Family Foundation v. Roberts*, No. 5:19-cv-229, 2020 WL 10790035 (D. Vt. Oct. 15, 2020), Mr. Bohnett asserts that Vermont law applies.  (*See* Doc. 18 at 2.)  The State maintains that state common-law rulings on private rights of action do not apply to this case because "[t]he underlying federal actions here proceed under federal authority specifically granted by Congress to state attorneys general." (Doc. 26 at 5.)  According to the State, the court must apply a federal standard for individual liability in this public enforcement action.  (*Id.* at 6.)

Since the FAC includes claims under both state and federal law, the court analyzes individual liability under both substantive sources of law.  *See People v. Debt Resolve, Inc.*, 387 F. Supp. 3d 358, 368 (S.D.N.Y. 2019) (discussing standard for individual liability under both New York law and the TSR).  For the reasons discussed below, the court concludes that the FAC plausibly alleges individual liability under both state and federal standards.

3

A.      **Federal Standards for TSR and TCPA Claims**

"[T]o state a claim for individual liability under the TSR, Plaintiff must allege that the individual '(1) participated in the acts or had authority to control the corporate defendant and (2) knew of the acts or practices.'" *Debt Resolve*, 387 F. Supp. 3d at 368 (quoting *F.T.C. v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 320 (S.D.N.Y. 2008)). The FAC includes plausible allegations on both points. It specifically alleges that Mr. Bohnett "owns, manages and controls any and all significant operations of TCA VOIP." (Doc. 8 ¶ 20.) Moreover, since the FAC states that "all allegations herein involving TCA VOIP are likewise allegations regarding the conduct of Dominic Bohnett" (*id.* ¶ 12), the court can infer that Mr. Bohnett had knowledge of all of the alleged acts and practices.

"[I]ndividuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the violative conduct." *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-cv-3232 (NSR), 2016 WL 1271693, at *5 (S.D.N.Y. Mar. 29, 2016). Since the FAC states that "all allegations herein involving TCA VOIP are likewise allegations regarding the conduct of Dominic Bohnett" (Doc. 8 ¶ 12), the court understands that the State alleges that Mr. Bohnett directly participated in or personally authorized the alleged unlawful conduct. No greater quantum of pleading is required. *See Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575, 580 (D. Del. 2015) (denying motion to dismiss TCPA claims against individuals—notwithstanding the fact that the complaint did not "specifically allege" how the individual defendants were involved—because the complaint did allege that the individual defendants were co-owner and general manager of the corporation and that their actions showed that "they have used control of their limited liability company to commit a fraud or wrong").

4

**B.   Vermont Standards for VCPA and VTSA Claims**

The parties disagree regarding the standard for individual liability for VCPA claims.  Mr. Bohnett argues that the veil-piercing analysis in *Hoehl* controls because the FAC relies upon an "alter ego" theory.  The State argues that *Hoehl* was a "private contract dispute between private parties" that has "nothing to do with a case involving vast hijacking of the telephone system for fraud."  (Doc. 26 at 22.)  The State asserts that it need not plead that the individual defendant himself committed the unlawful practices for public enforcement actions (like this one) under 9 V.S.A. § 2458.  (*Id.* at 17.)  The State further contends that even if this were a private action (like *Hoehl*) under 9 V.S.A. § 2461(b), there is a plausible claim for individual liability because the FAC alleges Mr. Bohnett's individual participation.  (*Id.* at 23–24.)  Mr. Bohnett insists that *Hoehl* controls because "its analysis is about how to establish *alter ego* liability for an individual based on the actions of an entity."  (Doc. 28 at 2 n.1.)

The FAC expressly includes an alter-ego theory.  (Doc. 8 ¶ 20.)  As the court noted in *Hoehl*, courts have dismissed veil-piercing/alter-ego theories under Fed. R. Civ. P. 12(b)(6) "in appropriate circumstances."  *Hoehl*, 2020 WL 10790035, at *33.  But the alter-ego analysis in *Hoehl* was for "cases not involving fraudulent activity."  *Id.* (quoting *Agway, Inc. v. Brooks*, 173 Vt. 259, 263, 790 A.2d 438, 441 (2001)).  The pleading in *Hoehl* did not use the word "fraud" and contained, at most, only "suggestions of fraud."  *Id.* at *30.  Without an allegation of fraud, the plaintiff in *Hoehl* could establish liability only by alleging "facts supporting disregard of the corporate identity."  *Id.* at *34.  By contrast, as the State points out, the words "fraud," "defraud" or "fraudulent" appear over 40 times throughout the FAC.  Thus—while the plaintiff in *Hoehl* failed to state a veil-piercing claim because it failed to allege facts supporting such

disregard of corporate identity—the State in this case plausibly asserts an alter-ego theory on the basis of the alleged fraud.

Dismissal of the VCPA claim would be improper for a second reason. The State's alter-ego theory is a "derivative" liability theory. *See Cent. Vt. Pub. Serv. Corp. v. Herbert*, No. 1:02CV187, 2002 WL 32882362, at *2 (D. Vt. Oct. 3, 2002); *cf. Associated Gen. Contractors of Conn., Inc. v. N.L.R.B.*, 929 F.2d 910, 914 (2d Cir. 1991) ("We adhere to the view that derivative liability requires a showing of alter ego, successorship or single employer status."). At the same time, however, Count XIV of the FAC charges Defendants (including Mr. Bohnett) with violations of the VCPA. (Doc. 8 at 45.) The court interprets that as a direct-liability claim against Mr. Bohnett.[1] The fact that there might be a separate derivative-liability theory does not preclude potential direct liability. *Cf. Consumer Fin. Prot. Bureau v. 1st All. Lending, LLC*, No. 3:21-cv-55 (RNC), 2022 WL 993582, at *7 (D. Conn. Mar. 31, 2022) ("[T]he fact that a separate theory of liability exists . . . has no bearing on how courts evaluate whether an individual defendant himself engaged in a UDAAP violation.").

Vermont courts construe the VCPA "to parallel the construction of § 5 of the FTCA [the Federal Trade Commission Act, 15 U.S.C. § 45]." *Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 18, 195 Vt. 524, 90 A.3d 885. Indeed, the VCPA and FTCA statutory provisions relevant to individual liability use parallel language. *Compare* 15 U.S.C. § 45(b) (authorizing action against "any . . . person" who "has been or is using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce . . . ."), *with* 9 V.S.A. § 2458(a) (authorizing

---

[1] The court rejects Mr. Bohnett's contentions that the State has pleaded only an alter-ego theory and that the State is now attempting to rewrite the FAC to include new theories of liability. In the court's view, the FAC includes an alter-ego theory but nothing in the FAC indicates that the alter-ego theory is asserted to the exclusion of a direct-liability theory.

action against "any person" who is "using or is about to use any method, act, or practice declared by section 2453 of this title to be unlawful"). "An individual may be held liable under the FTCA for a corporation's deceptive acts or practices if, with knowledge of the deceptive nature of the scheme, he either participates directly in the practices or acts or has authority to control them." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 306 (2d Cir. 2019) (cleaned up). Here, as noted above, the court can infer that Mr. Bohnett directly participated in or had authority to control the allegedly unlawful acts or practices. The FAC also alleges that Mr. Bohnett acted knowingly. (Doc. 6 at 1.)

The court arrives at a similar conclusion for the VTSA claims. A VTSA violation is a VCPA violation. *See* 9 V.S.A. § 2464a(c) ("A violation of this section shall constitute a violation of section 2453 of this title."). The parties have not suggested that the VTSA and VCPA have different standards for individual liability. In any case, the applicable VTSA provisions impose direct liability on any "person" who places prohibited telephone calls. 9 V.S.A. § 2464a(b)(2), (b)(3)(A). That definition appears to be broad enough to encompass the principal of a corporate caller. *See State v. Elec. Media Mktg. Grp., Inc.*, No. 325-6-17 Wncv, 2018 WL 11358614, at *2 (Vt. Super. Ct. Feb. 27, 2018) (granting summary judgment on liability against corporation and its principal for VTSA violations).

## Conclusion

Dominic Bohnett's Motion to Dismiss (Doc. 18) is DENIED.

Dated at Rutland, in the District of Vermont, this 7 day of September, 2022.

Geoffrey W. Crawford, Chief Judge
United States District Court